David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,     PLAINTIFF

VS.     _____

GOOGLE, LLC     DEFENDANTS

## COMPLAINT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following for copyright infringement.

### I: PARTIES TO THE CASE

1. I am a Youtuber and Twitch streamer who goes by the alias "Acerthorn." My Youtube channel can be found at the url of www.youtube.com/@acerthorn, and my Twitch channel can be found at the url of www.twitch.tv/acerthorn.

2. The Defendant is an online service provider. It can be served with process at the following name and address:

> Corporation Service Company
> 2710 Gateway Oaks Dr.,
> Suite 150N
> Sacramento, CA 95833

### II: JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this case because, as a case for copyright infringement, it has federal question jurisdiction.

4. Venue and personal jurisdiction is proper in this court because the defendant is headquartered in the Northern District of California.

## III: FACTS OF THE CASE

### III-1: Copyrighted Work

5.      On May 16, 2021, I did a live stream on Twitch, which I later transferred to Youtube, known as "Acerthorn's Credibility as a Reviewer (w/ Montyspa on Co-Commentary)." As of the time of this writing, this video can be found at the url of https://www.youtube.com/watch?v=iDKSx4oi-r0.

6.      This livestream was streamed manually (not auotmatically) by me, using the software known as "OBS Studio." My debate partner and I planned this debate weeks in advance. It was an intentional ad planned out stream.

7.      Throughout this stream, my debate partner and I primarily exchanged opinions about a game called Dark Souls, as well as the skill with which I alleged handled feedback regarding my prior criticism of that game.

8.      At timestamp 2:17:55 – 2:18:23, you can see me giving a smug smile while I put my fingers together in a very smug manner. It is a long video, so to keep you from having to navigate to the timestamp manually, you can click on this link to take you to that timestamp directly: https://youtu.be/iDKSx4oi-r0?t=8275.

9.      This was an intentional facial expression. In fact, at timestamp 2:18:09 – 2:18:23, I say dialogue that clearly indicates that I intended to make this expression.

10.     On January 17, 2022, I registered the copyright for this stream with the Copyright Office. Its copyright registration number is PA0002340792.

### III-2: Infringement

11.     There is a Youtube channel called "Acerthorn the True Acerthorn," or ATTA for short, which is dedicated to harassing me, doxxing me, impersonating me (as evidenced by the channel's name), and infringing on my copyright. This channel can be found at the url of https://www.youtube.com/@acerthornthetrueacerthorn4532.

12.     This channel has posted several videos which infringe on my copyright. Many of these videos are unregistered, which is the main reason I am not filing a claim for them at this moment. However, the channel icon (a circular image that appears next to the channel's name) is clearly a

snapshot of the "smug face" mentioned above.

13. Although the channel was originally created on February 29, 2020, it was not always called "Acerthorn the True Acerthorn." Instead, the owner of this channel changed the name of the channel after deciding to make a hobby out of harassing and impersonating me. It was at this point that he began using the screenshot from my copyrighted livestream. As you can see by viewing the channel, the oldest of his videos was posted on April 10, 2022. It is, therefore, highly likely that his uploading of the infringing icon also occurred on or shortly before this date.

14. Because the uploading of his icon most likely occurred approximately 83 days after the livestream was registered, the preponderance of the evidence overwhelmingly suggests that the registration predates the infringement, thereby entitling me to statutory damages.

### III-2: The DMCA Takedown Notice

15. On August 3, 2022, I issued a DMCA Takedown Notice to Youtube, asking them to remove the infringing icon.

16. In the early morning of August 4, 2022, I received a response from Youtube, informing me that Google is actually the company that hosts channel icons on Youtube's behalf, so if I want an infringing icon to be removed, I have to go through Google.

17. So I searched the database on copyright.gov and found Google's DMCA Designated Agent. I found the following listing: https://dmca.copyright.gov/osp/publish/history.html?search=Google+LLC&id=18b733849581703204a3229ddd03c10b. That listing said that the email address for Google's Designated Agent was dmca-agent@google.com.

18. So I submitted a DMCA Takedown Notice to that email address on August 4, 2022. This takedown notice was fully compliant with the DMCA's requirements for a takedown notice.

19. However, later that same day, Google responded to the DMCA Takedown Notice, stating that they were not going to process the takedown until I provided "additional information." They never stated exactly what information they wanted me to provide, and even if they did specify.

20. I filed a claim against Google LLC with the Copyright Claims Board, but on January 13, 2023, they filed an Opt-Out form, compelling the board to dismiss the case without prejudice. So I am now filing the lawsuit here.

## III: LEGAL ARGUMENT
### III-1: Prima Facie Copyright Infringement

21. "There are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant." See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986).

22. ATTA has undoubtedly copied from my livestream when he used that image for his channel icon. Therefore, the second element of prima facie copyright infringement is established.

23. To have a valid copyright, I must be the human author of an original and minimally creative work that is fixed into a tangible medium of expression.

24. The "author" is the one who fixes the work into a tangible medium of expression. See Community for Creative Non-Violence v. Reid, 490 US 730, 737 (1989) ("As a general rule, the author is the party who ... translates an idea into a fixed, tangible expression"). Even if the act of fixation is automated to the point of requiring only a single button press, as long as that one button press is performed by a human finger, that is still sufficient human authorship to constitute a valid copyright. See Burrow-Giles Lithographic Co. v. Sarony, 111 US 53 (1884).

25. I have sufficiently alleged that the human authorship requirement in ¶ 6 of this Complaint.

26. Meanwhile, ¶¶ 7-9 of this Complaint sufficiently allege that the work was minimally creative. To constitute originality and minimal creative spark, "even a slight amount [of creativity] will suffice." See Feist Publications, Inc. v. Rural Telephone Service Co., 499 US 340, 345 (1991).

27. The factual allegations contained in ¶¶ 7-9 of this Complaint are more than enough to satisfy this requirement. Multiple hours of exchanging opinions absolutely constitutes minimal creative spark. In fact, the very image that is being infringed in this case alone constitutes minimal creativity! After all, it is clear that ATTA chose that image primarily because of how *expresive* it is!

28. Therefore, I have a valid and enforceable copyright. Therefore, prima facie copyright infringement has been established.

### IV-3: DMCA Safe Harbor

29.     Before I continue, I wish to emphasize that, even if the Court finds that the defendant has safe harbor, that is not grounds for dismissal of this case in its entirety. I am also seeking prospective injunctive relief under 17 USC § 512(j), which is applicable even if the defendant has safe harbor for everything else.

30.     That being said, Google did not take down the infringing icon even when I submitted a technically perfect DMCA Takedown Notice to them. Instead, they stated that they would not process the takedown request until I provided them with "additional information." Furthermore, they never stated exactly what "additional information" they wanted. I was supposed to just read their minds on that.

31.     This is not a valid request. TThe DMCA only requires me to provide six things in the Takedown Notice. See 17 USC § 512(c)(3)(A)(i)-(vi). Those six things are …

>   (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
>   (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
>   (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
>   (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
>   (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
>   (vi)    A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an

exclusive right that is allegedly infringed.

32. I provided all six of these when I issued the DMCA Takedown.

33. The DMCA does not give an ISP the right to demand additional information from a DMCA Takedown Notice and still keep their safe harbor. Even if the law did provide for that, fundamental fairness and common sense requires that the ISP must be reasonably clear in exactly what information they want to be provided, which Google has not done in this case.

34. Therefore, the defendant has lost its safe harbor and is vicariously liable for the infringement.

### IV-4: Fair Use

35. Fair use is always something one must consider whenever you're dealing with the infringement of copyright, especially for antagonistic purposes. For this reason, I wish to explain why I believe the infringing icon does not qualify as fair use. I will examine two potential theories for fair use, and explain how I feel the infringing icon fails both theories.

### IV-4-A: The Infringing Icon Itself

36. First, the icon itself fails to offer anything of transformative value. Admittedly, there are additions to this image. There appear to be subtitles that contain the words "Acerthorn" and "laws," but parts of those words have been cropped out, so we have no way of knowing what the original message was. Also, on the left side, you can see part of another man's face.

37. It is clear that this icon was not an original creation, but was instead cropped out from a pre-existing meme. It is possible that the original meme might have passed for fair use, but without having the full meme in front of us, we have no way of knowing.

38. But even if the original meme was fair use, this icon still isn't. If you remove everything from a meme that makes it transformative, you lose the right to call the resulting crop transformative in turn. Imagine if I upload a movie clip to Youtube, and I claim that I got the clip from a review of that movie of that movie that I found online. Because that review was fair use, I can use the clip from the movie and have it still be fair use, right?

39. Not right. That's not how it works. If you remove all the transformative content, you lose the right to claim it is transformative.

40. Here, ATTA cropped out most of the stuff that could, conceivably, have rendered the meme transformative. What we are left with is a mish-mash of nebulous "stuff" simply slapped onto my face. That is not good enough to be considered fair use. "[T]he addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the original transformative." See Seuss v. Comicmix, , 983 F. 3d 443, 453 (9th Cir. 2020).

41. Contrast that with ATTA's channel art (as opposed to his channel icon), which you can see by scrolling to the very top of his channel. There, my likeness is positioned in front of a wall of twinkies, with a whole twinkie hanging out of my open mouth. This is a much stronger case for fair use, because the image actually provides criticism and commentary about me. Specifically, ATTA is making fun of how fat I am. This is transformative because it says something about me, not simply slapping some nebulous "stuff" onto the image and calling it a day.

42. For this reason, the icon fails to qualify as fair use on its own. However, there is one more way the icon might can qualify as fair use, which leads me to …

IV-4-B: The Channel as a Whole

43. While the icon may not qualify as fair use all on its own, it may not have to, as long as it is considered part of an otherwise fair use whole. For example, if a Youtube channel is dedicated to covering Star Wars content, then that channel might legally get away with using an otherwise non-transformative picture of Darth Vader as its channel icon. However, in order to get fair use for the icon, the channel itself must be, at least majority, dedicated to fair use content, e.g. movie reviews, story analysis, fan theories, stuff like that. It cannot simply be a repository for otherwise unaltered movie clips.

44. With that said, let's look at the videos that ATTA has posted. While I am not filing suit over these videos (at least not yet), they are nonetheless relevant in determining whether the channel as a whole can be considered a "fair use channel," thereby earning a pass for the otherwise nontransformative channel icon.

45. However, even by this generous standard, ATTA's channel fails miserably to clear the bar. He has only posted eleven videos so far. Two of them have already been taken down due to copyright infringement (more on that in a minute). Three of them (the two "Not on the fucking

stream" videos, and the "Acerthorn Eats a Fly" video) are entirely unaltered clips, with no new expression (transformative or otherwise) added in.

46. The video "Acerthorn is a doxxer and here's why" is even worse: It is literally just a verbatim upload of an entire video. It isn't even a clip; it's literally the whole video. The same is also true of the two aforementioned videos that have been taken down. Both of them were verbatim reuploads of entire videos. ATTA did not make even the slightest attempt at anything remotely resembling transformative value.

47. Then there's the "Acerthorn Theme Song" video. While the audio of that video is not copyrighted by me (it is instead copyrighted by a musician who goes by the stage name "Nihilore," from whom I have received permission to use his song as my channel's theme song), the visuals are indeed copyrighted by me. Only a few of the images in this slideshow, however, can even nominally be described as "transformative." The majority of the images of this slideshow consist of nothing more than me sitting in front of the computer and making various faces. Sometimes I am wearing my signature blue shirt and ball cap; other times (such as in the very beginning) I am wearing other clothes. But only a few of these images have made any modifications whatsoever, let alone transformative modifications.

48. That alone means that seven out of eleven videos (aka a majority of them) cannot qualify for fair use. So there is no need to discuss the remaining four videos.

49. It is clear, at this point, that ATTA is not actually concerned with fair use. Any nominal transformative value that ends up on his channel is entirely incidental. It is clear that he is not curating his content based on what is fair use. Therefore, his channel cannot be classified as a "fair use channel."

50. This means that the channel icon must qualify as fair use on its own to avoid liability for infringement, which, as I described in Section IV-4-A, it cannot do.

51. Therefore, the infringing icon is absolutely a blatant case of copyright infringement. There is no two ways about it.

**V: RELIEF REQUESTED**

52. In light of this blatant and malicious copyright infringement, I request the following

relief:

53.     First, $150,000 in statutory damages.

54.     Second, I request an injunction ordering the defendant to remove the content, pursuant to 17 USC § 512(j)(1)(A)(i).

55.     Third, an injunction ordering the defendant to terminate the google accounts, including all associated Youtube channels, pursuant to 17 USC § 512(j)(1)(A)(ii).

56.     I also request costs and attorneys fees (if I incur any attorneys fees), and any other relief to which I may be entitled.

## VI: CONCLUSION

57.     Wherefore, premises considered, I respectfully pray that judgment be entered in my favor, damages and injunctive relief be given, costs incurred be awarded, and any other relief to which I may be entitled.

So requested on this, the 16th day of January, 2023.

_____
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com