David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947        acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                        PLAINTIFF

VS.                             Case 3:23-cv-00322-TLT

GOOGLE, LLC                                                            DEFENDANTS

### REPLY TO [15] OPPOSITION TO [11] MOTION FOR PROTECTIVE ORDER

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Reply to Dkt. 15, the Defendant's Opposition to (Dkt. 11) Motion for Protective Order.

1. The Defendant has proudly announced that they have no intention of ceasing their baseless accusations against me of their own accord. Rather, they seem to openly confess that they have no evidence to support their claims! Specifically, on the final page of their Opposition, the defense claims that I have "filed an anticipatory *ex parte* motion asking this Court to admonish counsel **not to criticize him**" (emphasis in original).

2. This is, quite clearly, not what I am asking the Court to do. On multiple occasions throughout the motion and the proposed order, I made it abundantly clear that they could indeed make these accusations against me … *as long as they were supported by evidence*! Just an iota of evidence is all I ask.

3. If the Defendant believes that this minimal requirement has the effect of them not being allowed to criticize me at all, then that just proves that the Defendant knows full well that its accusations against me do not have even a scintilla of evidence to support them. If they had evidence, they would have nothing to fear for having this requirement placed upon them.

4. For what it is worth, my past litigation cannot be used to prove that the current litigation is being done solely to silence criticism. In support of this argument, I offer the persuasive precedent of Malibu Media, LLC v. Lee, Civ. No. 12-03900, 15 (D.N.J. May. 22, 2013)[1], which concerned the exact issue that the Defendants are attempting to complain about here: Filing

---

1 https://casetext.com/case/malibu-media-167?q=Malibur%20Media%20v.%20Lee%2012-03900&sort=relevance&p=1&type=case&resultsNav=false

frivolous copyright lawsuits for an illicit purpose, with the defense relying exclusively on the plaintiff's litigious history to support their claim that the then-current lawsuit was being filed for malicious reasons. The Court's finding was as follows:

> "Defendant counters that his unclean hands defense is supported by the evidence that Plaintiff has filed several hundred copyright infringement lawsuits to allegedly generate revenue via settlement negotiations … the Court agrees that Defendant has insufficiently plead a defense of unclean hands. Such defense is meant to relate directly to the offense in issue — in this case, the actual copyright infringement alleged. As the facts cited by Defendant do not appear to relate to the actual act of infringement … the Court will strike Defendant's sixth affirmative defense." p.15

5.   In other words, if the Defendant wishes to have this case thrown out on the grounds that I am "just trying to silence criticism," they need to show *actual proof* that this is *all* I'm trying to do. Moreover, simply pointing to my litigious past[2] is not good enough on its own to prove that I am filing suit for this specific motive.

6.   While that case is non-binding, it is directly based on case law that *is* binding on this Court. Specifically, it is based on the well-established precedent that the unclean hands defense must be reasonably related to the specific acts in controversy in the instant case. See Republic Molding Corporation v. BW Photo Utilities, 319 F. 2d 347, 349 (9th Cir. 1963) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts ... we should not by this doctrine create a rule comparable to that by which a careless motorist would be able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home") (citations and quotations omitted). See also Keystone Driller Co. v. General Excavator Co., 290 US 240, 245 (1933) ("[C]ourts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the

---

2   which, for the record, is a fraction of what the plaintiff in that case had, which is described by the Court as being "several hundred … lawsuits"

equitable relations between the parties in respect of something brought before the court for adjudication").

7.      So if the defense wants to raise this, they'll have to prove that *this specific lawsuit* is being filed *just* to silence criticism, not to legitimately enforce copyright and/or stop harassment and doxxing, and my litigious past absolutely cannot be used to prove that, especially when they happened years and years ago.

8.      Now, see what I just did there? I was able to refute the Defendant's arguments because, and only because, they actually gave arguments that I could refute. That is all I ask. All I ask is that the Defendant give something, *anything*, that I can respond to, instead of just stating "The Plaintiff is just trying to silence criticism" and giving absolutely no evidence whatsoever to support this extraordinary claim.

9.      Before I sign off, I have one last thing I wish to discuss: The defendant should be held to a higher standard, under Fed.R.Civ.P. 11, when filing a Motion to Dismiss for Failure to State a Claim than when they are filing any other motion. This is because a Motion to Dismiss, by its very nature, automatically and necessarily causes delay in the litigation. If the Complaint is not dismissed on the pleadings, the Defendant is obligated to file an Answer. However, the mere *filing* of a motion to dismiss automatically and without leave of court tolls their duty to do so. Even if the motion to dismiss is denied, the defense has, simply by way of filing it, bought itself several extra weeks (if not months) of consequence-free delay. No other type of motion that either party could file has the effect of automatically putting the entire case on hold, at least not without leave of court.

10.     The right to file a motion to dismiss exists because it has to. To abolish the motion to dismiss in its entirety would obviously do far more harm than good, and I do not seek to controvert this well-established principle. However, because of the inherent prejudice to the plaintiff's case caused by the mere filing of a motion to dismiss, courts should be cautious of the possibility – nay, the *inevitability* – that bad actors whose backs are to the wall may use these motions, despite knowing that their hopes of getting the case thrown out on the pleadings are slim, just to exploit the delay that is inherently baked into the very nature of this motion. As

such, arguments that might have barely squeaked by in any other motion should be treated as crossing the line and running afoul of Rule 11 when raised in a motion to dismiss, especially when the motion consists of multiple instances of these "borderline" arguments.

11. This is especially the case when the defendant is seeking dismissal on the pleadings on the basis of basis of fair use. Affirmative defenses can be adjudicated on a motion to dismiss, but they are typically for defenses that are fairly easy to prove, such as statute of limitations or safe harbor. Fair use, on the other hand, has historically been regarded as one of the fuzziest and most troublesome doctrines, not only in copyright law, but in law period. While it is not entirely unheard of for fair use to be adjudicated on a motion to dismiss, it is exceptionally rare.

12. For example, in the case of Hughes v. Benjamin, 437 F. Supp. 3d 382 (SD NY 2020), one of the most famous recent cases of fair use being adjudicated on a motion to dismiss, the Court found fair use after finding that 3 out of 4 factors definitively and indisputably favored fair use, with the second factor being neutral (not even weighing against fair use, just neutral) and of negligible import anyway. See id at 390-394.

13. For that matter, "the single most important element of fair use"[3] – the effect on the market – was able to be disposed of at the pleading stage primarily because the underlying facts were common knowledge (specifically, the heavily polarized nature of modern American political discourse; see id at 394), creating an ultra-rare exception to the general rule that the proponent of fair use must typically come forth with favorable evidence of relevant markets (see Campbell v. Acuff-Rose Music, Inc., 510 US 569, 590 (1994)), a burden of proof which, in nearly every other fair use case, would require the Court to look beyond the scope of the Complaint, which is not allowed on a motion to dismiss.

14. Moreover, the Court in Hughes found the infringing video to be transformative on the pleadings primarily because "a reasonable observer who came across the video would quickly grasp its critical purpose" (see id at 392), whereas here, the Defense seems to have finally come to the realization that they're going to have to explain themselves and provide external context that can't be gleaned just from a summary review of ATTA's icon in order to make their case for

---

[3] See De Fontbrune v. Wofsy, 39 F. 4th 1214, 1226 (9th Cir. 2022) (citing Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 566 (1985))

fair use, creating a world of difference between this case and Hughes.

15. In other words, Carl Benjamin didn't get fair use on a motion to dismiss because he had a "valid" or "strong" case for fair use. He got fair use on a motion to dismiss because he had a *literally perfect* case for fair use.

16. Therefore, if the Defendant moves to dismiss, and their basis for the motion rests exclusively (or even primarily) on fair use, the aforementioned caution regarding the potential for dismissal motions to be strategically exploited by bad actors for the delay they automatically cause, and the heightened Rule 11 standards to which these motions should be held in order to safeguard against that abuse, should apply tenfold for such an ambiguous and fuzzy defense. The Defendant should be extremely mindful of the high standard for dismissal for failure to state a claim, and all the restrictions placed on dismissal motions at this stage. Namely …

   (a) The Court cannot look beyond the scope of the complaint, unless a fact is subject to judicial notice under either FRE 201(b)(1) or 201(b)(2).

   (b) The Court must accept as true all facts alleged in the Complaint (again, unless the court can take judicial notice otherwise), and reasonably interpret all facts in a light most favorable to the plaintiff.

   (c) A complaint cannot be dismissed for failure to state a claim unless it is clear that I can prove no set of facts, whatsoever, that would entitle me to any relief.

17. This is a high bar to clear at the best of times, let alone regarding an issue as gray as fair use. So if the Defendant is not 100% certain, not just that ATTA's icon is fair use, but that there is literally nothing I can do to possibly change the court's mind on that, then they should instead file an Answer and hope for summary judgment later down the line.

18. It is telling that, in their Administrative Motion in the Polano case, they claim the second and fourth factors of fair use weigh in their favor, when they stated "the underlying copyrighted video is of minimal creativity" and "the channel's use of that screenshot has no impact whatsoever on the market for Plaintiff's video, if there even is such a market at all." But in their Opposition to Motion for Protective Order in the instant case, the defense seems to have abandoned those two factors. They certainly allude that more details are forthcoming in support

of the first factor, but they only factors they mention are the first and third factors. This heavily implies that, after reading my Opposition to their Administrative Motion as well as my Motion for Sanctions in the Polano case, they realize that they cannot possibly justify the second and fourth factors as being even arguably in their favor … yet they still plan to file a motion to dismiss (which requires literally perfect fair use) despite abandoning half of the relevant factors!

19.     In conclusion, the defendant's behavior in response to this very motion only confirms that my fears as to what they would do in this case without this admonishment were fully justified, and were not mere conjecture and fear mongering. They have admitted that they intend to use my years-old past actions as the sole, exclusive evidence to support the extraordinary claim that this current lawsuit is being filed solely to silence criticism. I was not merely paranoid when I said they were going to do this; they have now admitted that they intend to. The Court's cautionary warning is now more justified than ever.

20.     Wherefore, premises considered, I respectfully pray that the Court admonish the Defendant not to make inflammatory accusations against me without evidence – *admissible* evidence, at that – to back them up.

    Submitted on Feb. 27, 2023.

*/s/ David Stebbins*
David Stebbins (pro se)