1   RYAN S. BENYAMIN, State Bar No. 322594
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   1900 Avenue of the Stars, 28th Floor
    Los Angeles, California 90067
4   Telephone: (424) 446-6913
    Facsimile: (866) 974-7329
5   rbenyamin@wsgr.com

6   JASON MOLLICK (*pro hac vice*)
7   JEREMY P. AUSTER (*pro hac vice*)
    WILSON SONSINI GOODRICH & ROSATI
8   Professional Corporation
    1301 Avenue of the Americas, 40th Floor
9   New York, New York 10019
    Telephone: (212) 999-5800
10  Facsimile: (212) 999-5899
11  jmollick@wsgr.com
    jauster@wsgr.com
12
13  *Counsel for Defendant Google LLC*

14              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
15

16  DAVID STEBBINS,                    )   CASE NO.: 3:23-cv-00322-TLT
                                       )
17          Plaintiff,                 )   **MOTION TO DISMISS AND TO**
                                       )   **DECLARE PLAINTIFF A**
18      v.                             )   **VEXATIOUS LITIGANT**
                                       )
19  GOOGLE LLC,                        )
                                       )   Judge:  Hon. Trina L. Thompson
20          Defendant.                 )   Date:  June 13, 2023
                                       )   Time:  2:00 p.m.
21                                     )
                                       )   Action Filed:  January 20, 2023
22  _____)

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ..................................................................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    Plaintiff is a Federally-Recognized Vexatious Litigant With a Decade-Long History of Filing Frivolous Lawsuits and Wasting Judicial Resources ................ 3

    B.    In Recent Years, Plaintiff Has Filed a Barrage of Bogus Copyright Claims Against Google and YouTube in An Effort to Silence His Online Critics ........... 4

    C.    Plaintiff's Latest Copyright Lawsuit is Yet Another Waste of Judicial Resources Over Fair Use Criticism ................................................................... 7

ARGUMENT ...................................................................................................................... 9

    I.    COURTS ROUTINELY DISMISS COPYRIGHT INFRINGEMENT CLAIMS THAT TARGET FAIR USE CRITICISM ............................................ 9

    II.    THE CHANNEL'S IMAGE IS A FAIR USE OF PLAINTIFF'S LIVESTREAM ......................................................................................... 11

        A.    Factor 1: Purpose and Character of the Challenged Use .......................... 12

        B.    Factor 2: Nature of the Copyrighted Work ............................................... 15

        C.    Factor 3: Amount and Substantiality of the Portion Used ........................ 16

        D.    Factor 4: Effect Upon the Market or Value of the Copyrighted Work ..... 18

    III.    THE COURT SHOULD DECLARE PLAINTIFF A VEXATIOUS LITIGANT ..................................................................................................... 19

        A.    Factor 1: Notice and Opportunity to be Heard ........................................ 21

        B.    Factor 2: Adequate Record for Review .................................................... 21

        C.    Factor 3: Frivolous and Harassing Filings ............................................... 22

        D.    Factor 4: The Proposed Order is Narrowly Tailored................................ 24

CONCLUSION ................................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*Blanch v. Koons,*
    467 F.3d 244 (2d Cir. 2006) ......................................................................... 16

4

5

*Burnett v. Twentieth Century Fox Film Corp.,*
    491 F. Supp. 2d 962 (C.D. Cal. 2007) ......................................................... 10

6

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) .............................................................................. 12, 18

7

8

*City of Inglewood v. Teixeira,*
    2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) ......................................*passim*

9

10

*De Long v. Hennessey,*
    912 F.2d 1144 (9th Cir. 1990)..................................................... 20, 21, 22, 24

11

*Denton v. Hernandez,*
    504 U.S. 25 (1992) ....................................................................................... 11

12

13

*Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies,*
    2021 WL 3721438 (9th Cir. Aug. 23, 2021) ............................................... 14

14

15

*DraftExpress, Inc. v. Whistle Sports, Inc.,*
    2022 WL 16962285 (C.D. Cal. Aug. 2, 2022),
    *appeal filed*, No. 22-56188 (9th Cir. Dec. 20, 2022) ...........................*passim*

16

17

*Drevaleva v. McDonough,*
    2022 WL 15173728 (N.D. Cal. Oct. 26, 2022) ...................................... 20, 24

18

*Fisher v. Dees,*
    794 F.2d 432 (9th Cir. 1986) ....................................................................... 18

19

20

*Frost v. United States,*
    2020 WL 1288326 (N.D. Cal. Mar. 18, 2020) ................................. 20, 21, 24

21

22

*Google LLC v. Oracle Am., Inc.,*
    141 S. Ct. 1183 (2021) ..........................................................................*passim*

23

*Harper & Row, Publishers Inc., v. Nation Enterprises,*
    471 U.S. 539 (1985) ..................................................................................... 18

24

25

*Hosseinzadeh v. Klein,*
    276 F. Supp. 3d 34 (S.D.N.Y. 2017) ....................................................*passim*

26

27

*Hughes v. Benjamin,*
    437 F. Supp. 3d 382 (S.D.N.Y. 2020) ...................................................*passim*

28

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
    796 F.2d 1148 (9th Cir. 1986) ................................................................ 9, 12, 15

*In re Sindram*,
    498 U.S. 177 (1991) ............................................................................................. 25

*Kifle v. YouTube LLC*,
    No. 21-cv-01752-CRB, 2021 U.S. Dist. LEXIS 193604
    (N.D. Cal. Oct. 5, 2021) ........................................................................................ 9

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ............................................................................... 10

*Mattel Inc. v. Walking Mt. Prods.*,
    353 F.3d 792 (9th Cir. 2003) ......................................................... 12, 14, 15, 16

*Maxwell v. MOAB Inv. Grp., LLC*,
    2014 WL 4757429 (N.D. Cal. Sept. 24, 2014),
    *aff'd*, 632 F. App'x 424 (9th Cir. 2016) ............................................. 20, 21, 24

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ................................................................................ 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................................. 10

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) ....................................................... 20, 21, 22, 24

*Rodriguez v. Cook*,
    169 F.3d 1176 (9th Cir. 1999) ............................................................................. 25

*Savage v. Council on American-Islamic Relations, Inc.*,
    2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) ............................................. *passim*

*Scott v. Weinberg*,
    2007 WL 963990 (W.D. Wash. Mar. 26, 2007) ................................................. 25

*Sedgwick Claims Mgmt. Servs. v. Delsman*,
    2009 WL 2157573 (N.D. Cal. July 16, 2009) ............................... 10, 12, 13, 15

*Sony Comput. Ent't Am., Inc. v. Bleem, LLC*,
    214 F.3d 1022 (9th Cir. 2000) ....................................................................... 12, 17

*Stebbins v. Bradford*,
    2013 WL 3366289 (W.D. Ark. July 5, 2013),
    *aff'd*, 552 F. App'x 606 (8th Cir. 2014) .................................................... 3, 22

*Stebbins v. Google, Inc.*,
    2011 WL 5150879 (N.D. Cal. Oct. 27, 2011) ............................................. 3, 22

*Stebbins v. Hixson*,
    2018 WL 2124106 (W.D. Ark. May 8, 2018) .................................................... 4

*Stebbins v. Microsoft, Inc.*,
    2012 WL 12896360 (W.D. Wash. Jan. 13, 2012),
    *aff'd*, 520 F. App'x 589 (9th Cir. 2013) ........................................... 4, 22, 23, 24

*Stebbins v. Polano*,
    2022 WL 2668371 (N.D. Cal. July 11, 2022) ........................................*passim*

*Stebbins v. Rebolo*,
    2022 WL 2668372 (N.D. Cal. July 11, 2022) ........................................*passim*

*Stebbins v. Stebbins*,
    2013 WL 6182991 (W.D. Ark. Nov. 26, 2013) ................................ 4, 19, 21, 23

*Stebbins v. Stebbins*,
    575 F. App'x 705 (8th Cir. 2014) ...................................................... 3, 22, 25

*Stebbins v. Steen*,
    2013 WL 4496494 (E.D. Ark. Aug. 20, 2013) ................................................. 3

*Stebbins v. Texas*,
    2011 WL 6130403 (N.D. Tex. Oct. 24, 2011) ......................................... 3, 22

*Stebbins v. USDC-CAOAK*,
    No. 22-70132 (9th Cir. June 28, 2022) ................................................... 3, 22

*Stebbins v. USDC-CAOAK*,
    No. 22-70269 (9th Cir. Dec. 13, 2022) ................................................... 4, 22

*Stebbins v. USDC-CASJ*,
    No. 11-72595 (9th Cir. Sept. 2, 2011) ................................................... 3, 22

*Strojnik v. IA Lodging Napa First LLC*,
    2020 WL 2838814 (N.D. Cal. June 1, 2020) ......................................... 20, 21

*Woodruff v. Mason McDuffie Mortg. Corp.*,
    2022 WL 4487011 (N.D. Cal. Sept. 12, 2022) ........................................... 20

## STATUTES AND RULES

17 U.S.C. § 107 ........................................................................................*passim*

17 U.S.C. § 512(c) ....................................................................................... 3, 5

28 U.S.C. § 1651(a) ........................................................................................ 20

28 U.S.C. § 1915(e)(2)(B) ........................................................................... 6, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 10, 11

Fed. R. Civ. P. 41(a) ................................................................................................................. 6

1

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on June 13, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 9, Floor 19, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Tina L. Thompson, Defendant Google LLC ("Google") will and hereby does move the Court to dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and to declare Plaintiff a vexatious litigant. This Motion is based on the below Memorandum of Points and Authorities, the accompanying Declarations of Neha Reddy and Jason Mollick, Esq., the pleadings and records on file in this action, all other matters of which this Court may take judicial notice, and such other argument as may be heard by the Court.

## INTRODUCTION

Plaintiff David Stebbins—a *pro se* individual who posts videos on YouTube under the alias "Acerthorn"—is a federally-recognized vexatious litigant with a history of filing frivolous and abusive lawsuits across the country. In recent years he has set his sights on this District, filing bogus "copyright infringement" lawsuits for millions of dollars against virtually anyone who posts or displays the slightest amount of his content for purposes of criticizing him. In each case he is granted *in forma pauperis* status, racking up thousands of dollars in unpaid filing fees.

These lawsuits have had a predictable Streisand Effect.[1] Instead of muting critics as he hoped, Plaintiff has cultivated an even-louder chorus of online users who ridicule his litigious behavior. As the Honorable Jeffrey S. White noted in dismissing one of his many cases, "Plaintiff clearly feels aggrieved by comments made about him online …, but that does not mean Plaintiff has a viable copyright claim." *Stebbins v. Polano*, No. 21-cv-04184-JSW, 2022 WL 2668371, at *5 (N.D. Cal. July 11, 2022) ("*Polano*"). Judge White also ruled, in dismissing another case of the same ilk, that "much of the alleged infringement is plainly fair use," and that Plaintiff's repeated "attempt to manufacture and pursue ultimately meritless copyright infringement claims

---

[1] "[A] phenomenon whereby the attempt to suppress something only brings more attention or notoriety to it." Merriam-Webster, *Words We're Watching: "Streisand Effect"*, https://www.merriam-webster.com/words-at-play/words-were-watching-streisand-effect-barbra.

1   in an effort to silence online criticism smacks of bad faith and abuse of the Court system." *Stebbins*

2   *v. Rebolo*, No. 22-cv-00546-JSW, 2022 WL 2668372, at *3 (N.D. Cal. July 11, 2022) ("*Rebolo*").

3   In the last year alone, Plaintiff has been warned at least ***six times*** "that if he persists in filing

4   frivolous or meritless lawsuits, the Court may impose sanctions, bar him from filing further actions

5   without prior approval, and/or deem him a vexatious litigant." *Id.*; *accord Polano*, 2022 WL

6   2668371, at *5 (issuing same warning); *Polano*, Dkts. 134 at 1, 143 at 1-2, and 147 at 2 (same);

7   *Rebolo*, Dkt. 19 at 2 (same).

8        Plaintiff is not heeding these warnings.  A third-party user of Google's YouTube service

9   created a channel devoted to criticizing Plaintiff, and posted a small picture of Plaintiff's face as

10  an icon for the channel, superimposed with the phrase "ACERTHORN LAWS"—an unmistakable

11  reference to Plaintiff's abuse of the legal system.  Plaintiff sued Google, claiming the picture of

12  his face is a snapshot from a four-hour video that he registered with the United States Copyright

13  Office.  He charges Google with alleged "copyright infringement," demands $150,000 in damages,

14  and seeks an injunction requiring Google to permanently ban the user who dared to mock him.

15       This is exactly the sort of "bad faith and abuse of the Court system" that Judge White

16  warned about—indeed in the *Rebolo* case, the court dismissed an ***identical*** instance of supposed

17  "infringement" by a different user.  One would struggle to imagine a more obvious case of "fair

18  use" under the four-factor test set forth in Section 107 of the Copyright Act: (1) the sole purpose

19  of the allegedly infringing channel icon is to criticize and comment on Plaintiff's behavior, a

20  classic transformative use that is safeguarded by law; (2) the allegedly infringed video is of

21  minimal, if any, creativity; (3) the icon uses merely a split-second frame of a four-hour video; and

22  (4) the use of that screenshot has no impact whatsoever on the market for Plaintiff's copyrighted

23  video or any derivatives from that video, if there is such a market at all.  This Court should dismiss

24  Plaintiff's claim with prejudice on fair use grounds, as Judge White did in *Rebolo*.

25       More is needed, however.  Plaintiff has demonstrated that he will continue to burden this

26  District with frivolous and wasteful lawsuits.  He has ignored repeated warnings to think carefully

27  before filing.  And the more abusive lawsuits he brings, the more other YouTubers will criticize

28  him, resulting in even more lawsuits, and so on.  This wasteful cycle will continue until this Court

declares Plaintiff a vexatious litigant (as his home district has already done), subjects him to a pre-filing screening order, and denies *in forma pauperis* status in future cases.

**BACKGROUND**

**A.      Plaintiff is a Federally-Recognized Vexatious Litigant With a Decade-Long History of Filing Frivolous Lawsuits and Wasting Judicial Resources**

Plaintiff goes by the online alias "Acerthorn." Dkt. 5 (Compl.) ¶ 1. His YouTube channel includes numerous videos depicting gameplay footage of various video games, with Plaintiff providing voice-over review and analysis of the games. *Id.* (linking to Plaintiff's YouTube channel, available at https://www.youtube.com/@Acerthorn).

Plaintiff is widely ridiculed by users on YouTube and other platforms, in large part because of his years'-long abuse of the court system and the notice-and-takedown procedures under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c). Plaintiff has been deemed a vexatious litigant, and numerous federal courts have dismissed his lawsuits as frivolous. In this District, for example, he once sued Google to confirm a purported "arbitration award" for half a trillion dollars, even though no arbitration actually occurred. *Stebbins v. Google, Inc.*, 2011 WL 5150879 (N.D. Cal. Oct. 27, 2011) (dismissing *sua sponte* as "frivolous" and "clearly baseless"). There are many other suits as fantastical as that one. *See Stebbins v. Texas*, 2011 WL 6130403, at *3 (N.D. Tex. Oct. 24, 2011) (warning Plaintiff could face monetary sanctions and/or that the court would ban him from filing further actions without prior approval); *Stebbins v. Steen*, 2013 WL 4496494, at *2 (E.D. Ark. Aug. 20, 2013) (concluding Plaintiff's complaint was frivolous and failed to state a claim); *Stebbins v. Stebbins*, 575 F. App'x 705, 705 (8th Cir. 2014) (affirming dismissal and noting it is "undisputed that Stebbins has proceeded in forma pauperis on at least sixteen complaints [as of 2014] that proved meritless, and has filed numerous frivolous motions"); *Stebbins v. Bradford*, 2013 WL 3366289, at *3 (W.D. Ark. July 5, 2013) (dismissing Plaintiff's complaint as frivolous), *aff'd*, 552 F. App'x 606 (8th Cir. 2014). Plaintiff has also filed ***three*** baseless mandamus petitions in the Ninth Circuit, all of which were denied in one-page orders. *See* 9th Cir. Cases: *Stebbins v. USDC-CASJ*, No. 11-72595 (9th Cir. Sept. 2, 2011), *Stebbins v.*

*USDC-CAOAK*, No. 22-70132 (9th Cir. June 28, 2022), and *Stebbins v. USDC-CAOAK*, No. 22-70269 (9th Cir. Dec. 13, 2022); *see also infra at* 21-22.

Plaintiff has been reprimanded on countless occasions, but he persists in abusing the legal system, draining judicial and party resources, and accumulating thousands of dollars in waived filing fees. One federal court noted that "time spent dealing with Mr. Stebbins's filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly." *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), *aff'd*, 520 F. App'x 589 (9th Cir. 2013). Similarly, the Western District of Arkansas (Plaintiff's home district) declared him a "vexatious" litigant who has "abused the system" with "a history of filing ultimately meritless cases upon which the Court has been forced to expend countless hours of time and judicial resources. Not only has Plaintiff filed numerous cases, but he has also filed over one hundred motions within those cases, some of which have been repetitive, and few of which have had any merit." *Stebbins v. Stebbins*, 2013 WL 6182991, at *1 (W.D. Ark. Nov. 26, 2013). When that court limited Plaintiff to filing one case per every three months (*id.* at *3), he evaded the order by filing new complaints in the *Eastern* District, and then attempted to transfer those cases to the Western District. *Stebbins v. Hixson*, 2018 WL 2124106, at *1, *3 (W.D. Ark. May 8, 2018).

### B.     In Recent Years, Plaintiff Has Filed a Barrage of Bogus Copyright Claims Against Google and YouTube in An Effort to Silence His Online Critics

In June 2021, Plaintiff sued Google's parent company, Alphabet Inc., for hosting purportedly "infringing" user content on YouTube, which is operated by Google. He complained that users of YouTube and other online platforms had ridiculed him by posting copies of an "accidental livestream" in which his computer camera broadcast him online without his knowledge. *Polano*, 2022 WL 2668371, at *1. Plaintiff found this video to be embarrassing, and sought to manufacture a way to sue the users and compel YouTube to remove it. To that end, Plaintiff seized on abusing copyright law. First, he applied to register the accidental livestream with the United States Copyright Office as a "dramatic work," without disclosing that the video had actually been created due to a software glitch without any creativity on his part—a

1  fundamental requirement for any copyrighted work.  *Id.* at *4.  Once he obtained the registration,

2  he sued Alphabet and the other defendants for "copyright infringement," demanded over a million

3  dollars in damages from the users, and sought an injunction compelling Alphabet to ban them

4  permanently from YouTube.  *See Polano*, Dkts. 1, 55 (original Complaint and SAC).

5  Plaintiff did not stop there.  A few months later, in January 2022, he filed a related suit

6  against Alphabet, YouTube, Discord, Twitch, and at least eight YouTube users who had posted

7  videos criticizing his litigious behavior and abuse of the DMCA takedown process.  Plaintiff

8  claimed dozens of additional "copyright infringements" for virtually every instance where anyone

9  used pieces of his content to criticize him—including de minimis snippets of the accidental

10  livestream, displays of his YouTube channel logo, the sounds of his voice, and screenshots of his

11  face. *See generally Rebolo*, 2022 WL 2668372; *Rebolo*, Dkts. 1, 15 (original Complaint and FAC).

12  For example—and directly relevant here—he sued one user for creating a YouTube channel

13  designed to criticize him which used a picture of his face for a channel icon.  *Id.* Dkt. 15 ¶ 128.

14  Plaintiff claimed this was "infringement" because the picture was screenshotted from one of his

15  copyrighted videos.  *Id.*  He also sought leave to add infringement claims against a user operating

16  a channel called "Acerthorn The True Acerthorn"—the same channel that is alleged to be the direct

17  infringer here.  *Id.* Dkt. 16-1 ¶¶ 154-59.  For these supposed "infringements" Plaintiff sought $3.5

18  million in damages, plus (as in *Polano*) injunctive relief requiring YouTube to ban all user-

19  defendants from the platform.  *Id.* Dkt. 15 at 33.

20  Judge White dismissed the *Polano* case with prejudice, finding (among other things) that

21  the accidental livestream was not copyrightable and that "Plaintiff's registration application

22  contained inaccurate and incomplete information."  2022 WL 2668371, at *4.  Judge White

23  summarized the case as follows:

24  Plaintiff clearly feels aggrieved by comments made about him

25  online by the Individual Defendants and others, but that does not

26  mean Plaintiff has a viable copyright claim.  He does not, and his

27  pursuit of his claim has caused the Court to expend significant

28  resources addressing his meritless claims.  Plaintiff is warned that if

1              he persists in filing frivolous or meritless lawsuits, the Court may

2              impose sanctions, bar him from filing further actions without prior

3              approval, and/or deem him a vexatious litigant.

4    *Id.* at *5.[2]

5          Judge White also dismissed the related *Rebolo* case in a screening order under 28 U.S.C. §

6    1915(e)(2)(B) (authorizing a court to dismiss an *in forma pauperis* action at any time if it finds

7    that the plaintiff "fails to state a claim on which relief may be granted" or that the action is

8    "frivolous or malicious").  The court issued the same warning as in *Polano*, noting specifically

9    that Plaintiff was improperly targeting "plainly fair use criticism" with bad-faith litigation:

10          [M]uch of the alleged infringement is plainly fair use criticism as

11          Plaintiff himself concedes in the complaint.  Thus, amendment

12          would be futile….  Plaintiff's attempt to manufacture and pursue

13          ultimately meritless copyright infringement claims in an effort to

14          silence online criticism ***smacks of bad faith and abuse of the Court***

15          ***system***.  Plaintiff's bad faith and his history of filing frivolous

16          lawsuits further justifies dismissal without leave to amend….

17          Plaintiff is warned that if he persists in filing frivolous or meritless

18

---

19    [2] This was not the first time Judge White warned Plaintiff that he risked being declared a vexatious

20    litigant.  Several months earlier, Plaintiff attempted to evade a ruling on the validity of his alleged
copyright by rushing to dismiss Alphabet from *Polano* under Federal Rule of Civil Procedure

21    41(a), because he learned that Alphabet intended to present evidence that he had not been forthright
in his application to register the copyright.  Plaintiff filed a notice of dismissal just minutes before

22    Alphabet filed its motion to dismiss, then promptly moved to strike Alphabet's motion, imploring
the court to "do whatever it takes to cast the contents [of the copyrightability arguments] from his

23    mind" and "assum[e] the copyright's validity to be unchallenged."  *Polano*, Dkt. 135 at 3; *id*. Dkts.

24    128, 129, 130; *see also Polano*, 2022 WL 2668371, at *1.  The court struck Alphabet's motion,
but warned that it "does not endorse Plaintiff's efforts to manipulate the litigation process and his

25    blatant gamesmanship.  Should Plaintiff continue to dismiss and refile cases in bad faith to obtain
a different result, ***he risks being declared a vexatious litigant in this district***."  *Polano*, Dkt. 134

26    at 1 (emphasis added).  Alphabet reintervened, however, on the grounds that the copyrightability

27    issue was common to the *Rebolo* action where it remained a defendant.  The court allowed
intervention in light of "Plaintiff's abuse of the litigation process and his attempt to evade a ruling

28    on an essential question at the core of both cases[.]"  2022 WL 2668371, at *3.

1    lawsuits, the Court may impose sanctions, bar him from filing

2    further actions without prior approval, and/or deem him a vexatious

3    litigant.

4    2022 WL 2668372, at *3 (emphasis added).

5         Plaintiff subsequently filed motions for reconsideration and for relief from the judgments

6    in both actions, which remain pending.  *See Polano*, Dkts. 159, 162; *Rebolo*, Dkts. 21, 23.

7    **C.      Plaintiff's Latest Copyright Lawsuit is Yet Another Waste of Judicial**

8    **Resources Over Fair Use Criticism**

9         The present lawsuit is Plaintiff's latest attempt to wield copyright law as means of stifling

10   fair use criticism.  Plaintiff alleges that on May 16, 2021, he recorded a livestream that he later

11   uploaded to YouTube.  Compl. ¶ 5.  Plaintiff registered this livestream with the Copyright Office.

12   *Id.* ¶ 10.  The video, titled "Livestream – Acerthorn's Credibility as a Reviewer (w/ Montyspa on

13   Co-Commentary)," is nearly four hours long and can be found at the following URL:

14   https://www.youtube.com/watch?v=iDKSx4oi-r0 (the "Livestream").  *Id.* ¶ 1.  Plaintiff asserts that

15   at some point during the Livestream—between timestamps 2:17:55 to 2:18:23—he can be seen

16   "giving a smug smile while I put my fingers together in a very smug manner." *Id.* ¶ 8.  A screenshot

17   from that snippet is depicted below:



18
19
20
21
22

23        According to Plaintiff's own allegations, a third-party individual created a YouTube

24   channel called "Acerthorn The True Acerthorn" which, like many others, was dedicated to

25   criticizing him.  Compl. ¶ 11.    The channel was formerly available on YouTube at

26   https://www.youtube.com/@acerthornthetrueacerthorn4532, but the user removed it after Plaintiff

27   filed this lawsuit.  *Id.* ¶ 11; Reddy Decl. ¶ 2.  Although Plaintiff claims that the channel was

28   "harassing," he concedes elsewhere in the  Complaint that  the  channel  also  provided

"transformative" "criticism and commentary" about him.  Compl. ¶¶ 11, 41.  As part of the channel presentation, the channel utilized a small, circular icon that Plaintiff alleges was "clearly a snapshot of the 'smug face'" depicted in the Livestream.  *Id.* ¶ 12.  A copy of the image that was used for the icon (which Google has preserved) is below:



Reddy Decl. Ex. A.[3]  A copy of the "channel art" that appeared behind the icon (as Plaintiff alleges in Paragraph 41 of the Complaint) is below:



Reddy. Decl. Ex. B.  To show the context of the channel where the image was displayed, a screenshot of the Acerthorn The True Acerthorn channel homepage, taken by the WayBack Machine Internet Archive, is depicted in Exhibit A to the Mollick Declaration.[4]

Plaintiff acknowledges that the image at issue contains "additions" to what is depicted in his Livestream, including "subtitles that contain the words 'Acerthorn' and 'laws'" and "part of

---

[3] As Plaintiff alleges, the icon as it appeared on the channel was circular and thus cropped out the squared edges depicted above.  Compl. ¶ 12.  The image shown above is the manner in which it is preserved by Google's systems.  Reddy Decl. ¶ 3.

[4] The WayBack Machine (available at https://archive.org/web/) captures still-images of websites as they appeared at certain points in the past.  The image shown in Exhibit A to the Mollick Declaration is the most recent image available before the channel was taken down.  We were unable to locate a WayBack image that includes the icon at issue.  Mollick Decl. ¶ 4.

another man's face." Compl. ¶ 36.  The red background of the image also differs from the background in Plaintiff's Livestream.  Nonetheless, Plaintiff alleges that the image is a "prima facie copyright infringement" of the Livestream.  *Id.* ¶ 22.  And, anticipating the obvious deficiencies in his claim, he spends several pages in the Complaint defensively arguing that the image is not a fair use under the Copyright Act.  *Id.* ¶¶ 35-51.

As Plaintiff alleges, Google is the parent company of YouTube, and hosted the allegedly infringing image that appeared on the Acerthorn The True Acerthorn channel.  Compl. ¶ 16.  On that basis he asserts a claim against Google for vicarious copyright infringement.  *Id.* ¶ 34.  He demands $150,000 in statutory damages and an injunction ordering Google to ban the channel operator from YouTube permanently.  *Id.* ¶¶ 52-56.

## ARGUMENT

## I.  COURTS ROUTINELY DISMISS COPYRIGHT INFRINGEMENT CLAIMS THAT TARGET FAIR USE CRITICISM

"To establish secondary infringement, [a plaintiff] must first demonstrate direct infringement." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir. 2010); *accord, e.g.*, *Kifle v. YouTube LLC*, No. 21-cv-01752-CRB, 2021 U.S. Dist. LEXIS 193604, at *12 (N.D. Cal. Oct. 5, 2021) ("To show secondary infringement (i.e., 'contributory' or 'vicarious' infringement), a plaintiff must first 'establish that there has been direct infringement by third parties.'") (citation omitted).  Thus, to prevail on his vicarious infringement claim against Google—a form of secondary infringement—Plaintiff must establish that the Acerthorn The True Acerthorn channel directly infringed his copyright in the Livestream.

Section 107 of the Copyright Act, 17 U.S.C. § 107, provides that "the fair use of a copyrighted work, including such use by reproduction in copies … for purposes such as criticism [or] comment, … is not an infringement of copyright."  This doctrine "confers a privilege on people other than the copyright owner to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986).  Accordingly, if the challenged image is a fair

1   use of Plaintiff's Livestream, then the Acerthorn The True Acerthorn channel has not directly

2   infringed Plaintiff's copyright and Google cannot be liable for secondary infringement.

3        "Fair use is a mixed question of law and fact."  *Google LLC v. Oracle Am., Inc.*, 141 S. Ct.

4   1183, 1214 (2021) (cleaned up).  Nonetheless, courts routinely dismiss copyright infringement

5   claims under Rule 12(b)(6) where it is apparent on the face of the complaint that the alleged

6   conduct is fair use.  *See, e.g.*, *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir.

7   2008) (the "assertion of fair use may be considered on a motion to dismiss … when no material

8   facts are in dispute"); *Sedgwick Claims Mgmt. Servs. v. Delsman*, 2009 WL 2157573, at *4 (N.D.

9   Cal. July 16, 2009) (dismissing infringement claim on fair use grounds where defendant used

10  plaintiff's copyrighted headshots to criticize its executives' business practices); *Savage v. Council

11  on American-Islamic Relations, Inc.*, 2008 WL 2951281, at *9-10 (N.D. Cal. Jul. 25, 2008)

12  (dismissing infringement claim on fair use grounds where defendants posted audio excerpts of

13  plaintiff's radio program for purposes of criticizing plaintiff).[5]

14        In  considering  fair  use  on  a  motion  to  dismiss,  the  Court  may  consider  "materials

15  incorporated into the complaint by reference, and matters of which the court may take judicial

16  notice."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)

17  (citation omitted).  That includes Plaintiff's Livestream, the Acerthorn The Truth Acerthorn

18  channel,  and  the  allegedly  infringing  image—all  of  which  are  referenced,  described,  and

19  hyperlinked in the Complaint.  Compl. ¶¶ 5-14; *accord, e.g.*, *Savage*, 2008 WL 2951281, at *2

20  (considering allegedly infringing content referenced in complaint on a 12(c) motion as to fair use);

---

22  [5] *See also, e.g.*, *City of Inglewood v. Teixeira*, 2015 WL 5025839, at *6 (C.D. Cal. Aug. 20, 2015)
    (dismissing infringement claim on fair use grounds where defendant used only "brief portions of

23  the larger works in order to comment on, and criticize [plaintiff's] political activities"); *Burnett v.
    Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 967-72 (C.D. Cal. 2007) (dismissing

24  infringement claim on fair use grounds when defendant's comedy show, Family Guy, created a
    parody of plaintiff's copyrighted character and theme music); *DraftExpress, Inc. v. Whistle Sports,

25  Inc.*, 2022 WL 16962285, at *5 (C.D. Cal. Aug. 2, 2022) (dismissing infringement claim on fair
    use grounds where defendant utilized two seconds of a three minute video showing footage of a

26  professional basketball star), *appeal filed*, No. 22-56188 (9th Cir. Dec. 20, 2022); *Hughes v.
    Benjamin*, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) (dismissing infringement claims concerning

27  YouTube videos on fair use grounds where defendant used portions of plaintiff's own YouTube

28  videos for purposes of criticizing her).

*DraftExpress*, 2022 WL 16962285, at *1 nn.1, 3 (taking judicial notice of original and allegedly-infringing videos that were referenced but not attached to complaint); *City of Inglewood*, 2015 WL 5025839, at *1-3 (taking judicial notice of allegedly infringing YouTube videos referenced in complaint); *Hughes*, 437 F. Supp. 3d at 386 n.1 (considering YouTube videos on a 12(b)(6) motion based on fair use because the videos were "incorporated by reference into the Complaint").

Additionally, because Plaintiff is proceeding *in forma pauperis* (Dkt. 6), this Court retains authority under 28 U.S.C. § 1915(e)(2)(B) to dismiss the case at any time if it determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted.  "[T]he *in forma pauperis* statute, unlike Rule 12(b)(6), accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.  Thus, the court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citation omitted; cleaned up).

Indeed, in *Rebolo*, Judge White dismissed virtually identical infringement claims in a Section 1915 screening order.  As noted, that case included allegations that a channel icon was infringing because it used a screenshot of Plaintiff's face from a different copyrighted video—the same conduct that he alleges here.  *Rebolo*, Dkt. 15 ¶ 128.  Plaintiff also raised allegations in *Rebolo* concerning the same Acerthorn The True Acerthorn channel that is accused of being the direct infringer here.  *Id.* Dkt. 16-1 ¶¶ 154-59.  The court found that this was "plainly fair use criticism," and that "Plaintiff's attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system."  2022 WL 2668372, at *3.  The same order of dismissal is warranted now—except this time, instead of "warn[ing]" Plaintiff against filing such "frivolous" claims (*id.*), this Court should impose sanctions by declaring him a vexatious litigant and subjecting him to a filing bar.

## II.       THE CHANNEL'S IMAGE IS A FAIR USE OF PLAINTIFF'S LIVESTREAM

Section 107 of the Copyright Act identifies four factors that a court must consider in determining fair use: (1) "the purpose and character of the use, including whether such use is of a

1  commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted

2  work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work

3  as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted

4  work."  "The four factors are to be considered together in light of the purposes of copyright, not

5  in isolation."  *Sony Comput. Ent't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1026 (9th Cir. 2000)

6  (citation omitted).  "Not all factors must be met in order for the Court to make a determination of

7  fair use."  *Sedgwick*, 2009 WL 2157573, at *4.

8        As discussed below, all of the factors weigh heavily in favor of fair use here, based on the

9  face of the Complaint and the materials incorporated therein by reference.

10       **A.    Factor 1: Purpose and Character of the Challenged Use**

11       The first factor considers "the purpose and character of the use, including whether such use

12  is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1).  This

13  inquiry turns in large part on "whether the copier's use adds something new, with a further purpose

14  or different character, altering the copyrighted work with new expression, meaning or message."

15  *Oracle*, 141 S. Ct. at 1202 (cleaned up; citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569,

16  579 (1994)).  Courts "have used the word 'transformative' to describe a copying use that adds

17  something new and important."  *Id.* at 1203.  "Although [a] transformative use is not absolutely

18  necessary for a finding of fair use, … the goal of copyright, to promote science and the arts, is

19  generally furthered by the creation of transformative works.  Such works thus lie at the heart of

20  the fair use doctrine's guarantee of breathing space within the confines of copyright, … and the

21  more transformative the new work, the less will be the significance of other factors … that may

22  weigh against a finding of fair use."  *Campbell*, 510 U.S. at 579 (citation omitted).

23       Of particular importance here, "[Section] 107 expressly permits fair use for the purposes

24  of criticism and comment."  *Hustler*, 796 F.2d at 1153; *see also* 17 U.S.C. § 107.  "[W]orks that

25  comment and criticize … are by their nature often sufficiently transformative to fit clearly under

26  the fair use exception."  *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 800 (9th Cir. 2003)

27  (citing *Campbell*, 510 U.S. at 579); *see also, e.g.*, *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 42

28

(S.D.N.Y. 2017) ("[C]ourts have regularly found fair use after holding that the purpose or character of an allegedly infringing work was criticism and/or comment.").

It is readily apparent from the face of the Complaint, and the materials incorporated by reference, that the allegedly-infringing image is a transformative use of Plaintiff's Livestream for the sole purpose of criticizing and commenting on his behavior.  The image superimposes the phrase "ACERTHORN LAWS" around the screenshot of Plaintiff's face—an unmistakable reference to his abuse of copyright law and the judicial system.  This is also readily apparent from the broader context of the Acerthorn The True Acerthorn channel where the image appeared.  Plaintiff concedes that the channel provided "criticism and commentary" about him, including by mocking his physical appearance through channel art that he admits is "transformative."  Compl. ¶ 41.  Several video titles accused Plaintiff of being a "doxxer" and "sub botting"—practices frowned upon by the online community.  *See* Mollick Decl. Ex. A (screenshot of channel).  The channel also recommended that visitors view content posted by other YouTube users Plaintiff has sued in the past for criticizing him, whom it dubs "Acerthorn's Archenemies."  *Id.*  These include users that are known by aliases SidAlpha, Enclave Emily, Creetosis, and SofiannP—all of whom are defendants in the *Polano* and/or *Rebolo* cases.  *Id.*  The channel also referenced an "Alternate Channel" that similarly criticizes Plaintiff's litigiousness, including with a parodic threat of "gimme money … or I'll sue you."  *Id.*  Any visitor would instantly recognize that this content— while crude at times—is critical commentary.  *See Hughes*, 437 F. Supp. 3d at 391-2 (finding that the "critical nature" of an allegedly infringing YouTube video was "apparent from the broader context of [defendant's] YouTube channel," including because "a reasonable observer who came across the video would quickly grasp its critical purpose").

Such criticism is unquestionably transformative, as courts confronting similar facts have repeatedly held.  *See, e.g.*, *Sedgwick,* 2009 WL 2157573, at *5 (finding "there can be no legitimate dispute" that defendant's copying of plaintiff's photographs was transformative where defendant used headshots of plaintiff's executives to criticize its business practices); *City of Inglewood*, 2015 WL 5025839, at *6, *8 (finding defendant's videos were "highly transformative" where they used "brief portions" of plaintiff's YouTube videos "in order to comment on, and criticize [plaintiff's

political activities"); *Hosseinzadeh*, 276 F. Supp. 3d at 45 (finding first factor "weighs heavily in defendants' favor" where defendants' videos constituted "quintessential criticism and comment"); *Hughes*, 437 F. Supp. 3d at 391 (finding fair use where it was "clear from the face of [plaintiff's] Complaint that [defendant] copied portions of [plaintiff's YouTube video] for the transformative purposes of criticism and commentary"). Indeed, in *Rebolo*, Judge White dismissed infringement claims against the ***same channel*** (and others) on the grounds that it contained "plainly fair use criticism." 2022 WL 2668372, at *3.

In addition to transformative criticism, another "element of the first factor analysis is whether the work's 'purpose' was commercial or had a non-profit aim." *Mattel*, 353 F.3d at 803 (citation omitted). "There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use." *Oracle*, 141 S. Ct. at 1204. Here, Plaintiff has not alleged (and cannot allege) that the channel's image serves any commercial purpose.[6]

Lastly, while Plaintiff alleges that the Acerthorn The True Acerthorn channel is "dedicated to harassing me, doxxing me, impersonating me" (Compl. ¶ 11), the user's good or bad faith is irrelevant to the fair use analysis. As the Supreme Court recently held, "[c]opyright is not a privilege reserved for the well-behaved." *Oracle*, 141 S. Ct. at 1204; *accord, e.g.*, *Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies*, 2021 WL 3721438, at *1 (9th Cir. Aug. 23, 2021) ("[T]he Supreme Court has minimized the relevance of bad faith as part of the first factor, … and we conclude it plays no significant role here."). In *Savage*, for example, the plaintiff alleged that the defendant's bad-faith motive for using the at-issue work undermined its fair use defense. 2008 WL 2951283, at *5. The Northern District rejected that argument, explaining that "Plaintiff tries to conflate 'motive' with the purpose and character of the use, which is not permitted by the case law. Rather, even assuming the truth of plaintiff's allegations about motive, it is the manner

---

[6] Even if the channel, and to some tiny extent the icon, served some hypothetical commercial purpose, the first factor would still "go a substantial way to support a finding of fair use" because the image is a "quintessential transformative work[] for the purpose of criticism and commentary." *City of Inglewood*, 2015 WL 5025839, at *9 (finding fair use despite assuming that the allegedly infringing work was used for a commercial purpose); *see also DraftExpress*, 2022 WL 16962285, at *3 ("Even if the [defendant's video] were considered at least partially commercial, its transformative nature offsets the significance of any commercialism.").

1  of use, not the motivation behind it, which must be analyzed: 'what use was made,' rather than

2  'who is the user.'"  *Id.* at *5.  Here, the channel's use of a screenshot from Plaintiff's Livestream,

3  while perhaps crude, is exactly the type of fair use "criticism" expressly endorsed by Section 107.

4       **B.**       **Factor 2: Nature of the Copyrighted Work**

5       The second factor of the fair use test concerns the "nature of the copyrighted work."  17

6  U.S.C. § 107(2).  When evaluating this factor, courts "consider whether the [allegedly infringed]

7  work is imaginative and original, or whether it represented a substantial investment of time and

8  labor made in anticipation of a financial return."  *Hustler*, 796 F.2d at 1153-54.  "The scope of fair

9  use is greater when 'informational' as opposed to more 'creative' works are involved."  *Id*.  This

10  factor "typically has not been terribly significant in the overall fair use balancing."  *Mattel Inc.*,

11  353 F.3d at 803 (citation omitted).  That is especially true where, as here, "transformative uses are

12  involved."  *Sedgwick*, 2009 WL 2157573 at *6.

13       While generally of lesser importance, the second factor weighs decidedly in favor of fair

14  use here.  Plaintiff's Livestream is essentially a factual interview of Plaintiff concerning his video

15  game reviews.  For the entirety of the nearly four-hour video, the unmoving camera is fixed on

16  Plaintiff, who is seen sitting in front of his computer as he converses with the interviewer (who

17  never appears on camera).  The only other images shown are a handful of unaltered internet

18  webpages.  These qualities all demonstrate that the Livestream has relatively minimal creative

19  value.  The facts are similar to *DraftExpress*, where the court found that a copyrighted interview

20  was "quintessentially factual and informational, with relatively little creativity."  2022 WL

21  16962285, at *4.  While the court acknowledged that creativity can exist in interviews, "such as

22  using a nontraditional format, colorful lighting, or surprising questions," the interview at issue

23  contained none of those elements.  *Id*.  It was instead designed to elicit factual information and

24  consisted of a "simple, static close-up shot" of the interviewee speaking.  *Id*.  That also

25  characterizes Plaintiff's Livestream, which is effectively an unedited, static recording of Plaintiff

26  engaging in a factual conversation about video games.  The Livestream is therefore clearly more

27  "informational than creative."  *Savage*, 2008 WL 2951281, at *7 (describing audio excerpts from

28  a call-in radio talk show); *see also City of Inglewood*, 2015 WL 5025839, at *9-10 (second factor

1   supported fair use where the allegedly infringed "City Council Videos" were merely

2   "straightforward recordings of public proceedings," "not creative in nature," and therefore entitled

3   to only "very narrow copyright protection").

4       In evaluating the second factor, courts will also consider "whether the work is published

5   or unpublished, with the scope for fair use involving unpublished works being considerably

6   narrower." *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006) (citation omitted).  The Livestream

7   here is a published work, available for free to anyone in the world who clicks its URL.  Compl. ¶

8   5.  Thus the second factor, like the first, weighs in favor of fair use.

9       **C.      Factor 3: Amount and Substantiality of the Portion Used**

10      The third factor considers "the amount and substantiality of the portion used in relation to

11  the copyrighted work as a whole."  17 U.S.C. § 107(3).  This factor "looks to the quantity and

12  significance of the material used to determine whether the use is reasonably necessary to

13  accomplish the purpose of the defendant's work and whether it supersedes or constitutes the heart

14  of the original work." *Savage*, 2008 WL 2951281, at *7.  If a defendant uses a copyrighted work

15  for a transformative purpose, such as commentary or criticism, then this factor will generally weigh

16  in favor of fair use. *See Oracle*, 141 S. Ct. at 1205.  Even "copying a larger amount of material

17  can fall within the scope of fair use where the material copied captures little of the material's

18  creative expression or is central to a copier's valid purpose." *Id.*; *see also, e.g.*, *Mattel*, 353 F.3d

19  at 803 n.8 ("We have … held that entire verbatim reproductions are justifiable where the purpose

20  of the work differs from the original.").

21      Here, the third factor heavily favors fair use because the at-issue image uses only an

22  infinitesimal portion of Plaintiff's Livestream.  It is a single, instantaneous snapshot from a nearly

23  ***four-hour*** audiovisual work.  If the snapshot were one second long (and it is not even that), it

24  would account for just ***0.00717%*** of the Livestream.  Further, the channel's use of that screenshot

25  was "tethered to a valid, and transformative, purpose" (*Oracle*, 141 S. Ct. at 1205): to comment

26  on and criticize Plaintiff.  The amount and purpose of the use overwhelmingly supports a finding

27  of fair use. *See City of Inglewood*, 2015 WL 5025839, at *10 (finding fair use where defendant's

28  YouTube videos used only "small portions" of plaintiff's own videos to serve the "very specific

1   and particular purpose[]" of commentary and criticism).  Courts have found fair use in cases where

2   defendants used far larger portions of a copyrighted work for a similar transformative purpose.

3   *See, e.g.*, *Hughes,* 437 F. Supp. 3d at 392-94 (finding fair use on a motion to dismiss where

4   defendant used 20% of plaintiff's YouTube video for commentary and criticism); *Hosseinzadeh*,

5   276 F. Supp. 3d at 46 (finding fair use where defendant's use of "three minutes and fifteen seconds

6   of a five minute and twenty-four second video" was "reasonable to accomplish the transformative

7   purpose of critical commentary").

8        The Ninth Circuit's holding in *Sony* is particularly instructive.  In that case, the defendant

9   was accused of using a screenshot of Sony's copyrighted video game in advertisements for

10  defendant's own gaming-related software.  214 F.3d at 1025.  With respect to the "protectability

11  of screen shots," the court found that "the third factor will almost always weigh against the video

12  game manufacturer since a screen shot is such an insignificant portion of the complex copyrighted

13  work as a whole." *Id.* at 1028-29.  Here too, the challenged image is an insignificant, split-second

14  portion of a four-hour video, and it uses the absolute bare minimum of that video to comment on

15  and criticize Plaintiff.

16       Further, the screenshot does not "supersede[] or constitute[] the heart of the original work."

17  *Savage*, 2008 WL 2951281, at *7.  Similar to the screenshot in *Sony,* which represented just a

18  "small amount of a video game" that featured multi-hour gameplay, the screenshot here is plainly

19  "of little substance to the overall copyrighted work."  214 F.3d at 1028.  It reveals nothing

20  whatsoever about the subject and substance of the Livestream—and certainly not anything that is

21  even arguably "creative" in nature.  Plaintiff does not allege, nor can he possibly suggest, that this

22  usage supersedes or constitutes the "heart" of the Livestream.  *See Savage*, 2008 WL 2951281, at

23  *7 (rejecting argument that four-minute excerpt of a two-hour radio talk show constituted the

24  "heart of the original work"); *DraftExpress*, 2022 WL 16962285, at *4 (defendant's use of a two-

25  second snippet of plaintiff's interview did not comprise the "heart" of the work where the snippet

26  consisted of "the interviewee simply stating his name").

27

28

### D.  Factor 4: Effect Upon the Market or Value of the Copyrighted Work

The fourth and final factor concerns "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  The Supreme Court recently described this as "undoubtedly the single most important element of fair use."  *Oracle*, 141 S. Ct. at 1215 n.5 (citing *Harper & Row*, *Publishers Inc., v. Nation Enterprises*, 471 U.S. 539, 566 (1985)).  Importantly, the "Supreme Court has held that critique or commentary of the original work, such as a parody, that kills demand for the original by force of its criticism … does not create a cognizable harm under the Copyright Act."  *Savage*, 2008 WL 2951281, at *8 (citing *Campbell,* 510 U.S. at 591-92).  That is because "[c]opyright law is not designed to stifle critics." *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).  Thus, "the economic effect … with which [courts] are concerned is not [the] potential [of the secondary use] to destroy or diminish the market for the original – any bad review can have that effect – but rather whether it *fulfills the demand* for the original."  *Id.* at 438 (emphasis in original).  Put another way: "Biting criticism suppresses demand; copyright infringement usurps it."  *Id.*; *accord, e.g.*, *Hosseinzadeh*, 276 F. Supp. 3d at 43 ("[T]he role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps it.") (citation omitted).

This factor overwhelmingly supports a finding of fair use.  Plaintiff has not alleged that there is *any* economic market for the Livestream or its derivatives, let alone that the channel icon somehow usurps that market or fulfills demand for his content.  *See Savage*, 2008 WL 2951281, at *9 (finding fair use where "plaintiff fail[ed] to allege or suggest an impact on the actual or potential sale, marketability, or demand for the original, copyrighted work.  There is no suggestion that plaintiff currently has, or ever had, any kind of market for the copyrighted work at issue outside its airing ….").  Even if there were a market for the Livestream, the challenged image could not possibly usurp it.  The Livestream is a nearly four-hour-long audiovisual work containing a discussion about Plaintiff's video game reviews; the image is an instantaneous and edited screenshot from that video, thus providing an entirely different viewer experience.  To the extent there is any market demand for the Livestream or any content within that video (which Plaintiff has not even alleged), a single screenshot intended to comment on and criticize Plaintiff cannot

1    possibly serve that demand.  Put another way: an individual who wishes to consume the content

2    of the Livestream would not visit the Acerthorn The True Acerthorn channel as a substitute.

3           When confronted with similar non-usurping uses, courts consistently find fair use.  *See,

4    e.g.*, *Savage*, 2008 WL 2951281, at *9 (finding fair use where "the effect of defendants' usage is

5    limited to the public criticism and condemnation of the ideas within the original work, not market

6    damage in the economic sense"); *City of Inglewood*, 2015 WL 5025839, at *12 (fourth factor

7    supported fair use where the original works were "lengthy, unadorned videos of City Council

8    meetings" and the allegedly infringing works were "considerably shorter" and "exclusively for the

9    purpose of presenting [defendant's] views and commentary on [plaintiff's] politics");

10   *DraftExpress*, 2022 WL 16962285, at *5 (defendant's video was "not a market substitute" for

11   plaintiff's because "someone watching the former will have a 'very different experience' from

12   watching the latter"); *Hughes*, 437 F. Supp. 3d at 394 ("[A]lthough [defendant's YouTube video]

13   is comprised entirely of portions of [plaintiff's YouTube video], there is no reason to think that

14   [plaintiff's] audience will abandon her progressive YouTube channel to watch the derisively-titled

15   [video] on a conservative YouTube channel simply because it contains parts of her work.");

16   *Hosseinzadeh*, 276 F. Supp. 3d at 47 (fourth factor supported fair use because "anyone seeking to

17   enjoy [plaintiff's video] on its own will have a very different experience watching the [defendant's]

18   video, which responds to and transforms the [plaintiff's] video from a skit into fodder for caustic,

19   moment-by-moment commentary and mockery.").

20   **III.    THE COURT SHOULD DECLARE PLAINTIFF A VEXATIOUS LITIGANT**

21          This Court should also declare Plaintiff a "vexatious" litigant and enter a pre-filing

22   screening order.  Such sanctions are warranted given Plaintiff's decade-long abuse of the judicial

23   system across the country (including in his home district, where he has been declared vexatious).

24   *Stebbins v. Stebbins*, 2013 WL 6182991.  In this District, in just the last year, he has been warned

25   at least ***six times*** "that if he persists in filing frivolous or meritless lawsuits, the Court may impose

26   sanctions, bar him from filing further actions without prior approval, and/or deem him a vexatious

27   litigant."  *Polano*, 2022 WL 2668371, at *5; *see also Rebolo*, 2022 WL 2668372, at *3; *Polano*,

28

Dkts. 134 at 1, 143 at 1-2, and 147 at 2; *Rebolo*, Dkt. 19 at 2.  Those warnings have fallen on deaf ears.  It is time for Plaintiff to face the consequences of his misconduct.

"Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Strojnik v. IA Lodging Napa First LLC*, 2020 WL 2838814, at *6 (N.D. Cal. June 1, 2020) (citing *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990)).  To prevent such abuse, the "All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  While pre-filing orders are "an extreme remedy" that should not be entered "with undue haste" (*id.*), courts in this District have imposed such orders where, as here, a vexatious *pro se* litigant demonstrates a history of engaging in frivolous and abusive litigation. *See, e.g.*, *Drevaleva v. McDonough*, 2022 WL 15173728, at *5 (N.D. Cal. Oct. 26, 2022) (declaring *pro se* plaintiff vexatious and imposing pre-filing screening order); *Strojnik*, 2020 WL 2838814, at *13 (same).[7]

Ninth Circuit courts apply a four-factor test (originally set forth in *De Long*) when determining whether to declare someone a vexatious litigant and impose a pre-filing order. *Molski*, 500 F.3d at 1057.  "First, the litigant must be given notice and a chance to be heard before the order is entered.  Second, the district court must compile 'an adequate record for review.'  Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation.  Finally, the vexatious litigant order 'must be narrowly tailored to closely fit the specific vice encountered.'" *Id.* at 1057 (citing *De Long,* 912 F.2d at 1147-48) (internal citations omitted).  Each of these factors favors an order here.

---

[7] *See also, e.g.*, *Woodruff v. Mason McDuffie Mortg. Corp.*, 2022 WL 4487011, at *7 (N.D. Cal. Sept. 12, 2022) (declaring *pro se* plaintiff "vexatious" and issuing a pre-screening order); *Frost v. United States*, 2020 WL 1288326, at *9 (N.D. Cal. Mar. 18, 2020) (same); *Maxwell v. MOAB Inv. Grp., LLC*, 2014 WL 4757429, at *7 (N.D. Cal. Sept. 24, 2014), *aff'd*, 632 F. App'x 424 (9th Cir. 2016) (same).

### A.     Factor 1: Notice and Opportunity to be Heard

The first factor "simply requires that the litigant be given an opportunity to oppose the order before it is entered." *Strojnik*, 2020 WL 2838814, at *7; *accord Molski*, 500 F.3d at 1058. This requirement is satisfied "as long as the party potentially subject to a pre-filing order has the opportunity to fully brief the issue." *Id.*; *accord Frost*, 2020 WL 1288326, at *6. Plaintiff will have an opportunity to oppose this motion, so factor one is satisfied.

### B.     Factor 2: Adequate Record for Review

"The second factor of the *De Long* standard is whether the district court created an adequate record for review." *Molski*, 500 F.3d at 1059. "An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." *Id.; accord Frost*, 2020 WL 1288326, at *6 ("The second factor is procedural," and "requires only that the court compile a list of actions and filings by the litigant.") (citation omitted).[8] Here, Plaintiff's litigation record, both in and outside of this District, is replete with cases and filings evidencing his vexatious conduct. As discussed above, Plaintiff's home district, the Western District of Arkansas, has already declared him a "vexatious" litigant and imposed a multi-faceted pre-filing screening order. *Stebbins v. Stebbins*, 2013 WL 6182991. Numerous other federal courts, including in this District, have dismissed Plaintiff's lawsuits as patently frivolous. *Supra* at 3-4, *infra* at 22-24 (summarizing dismissals).[9] The recently-dismissed *Polano* and *Rebolo* cases are just the latest examples.[10] *Supra* at 4-7, *infra* at 22-24. Plaintiff has also filed at least three nonsensical mandamus petitions in the Ninth Circuit, all of which were

---

[8] The record need not "list every case" ever filed by the vexatious party. *Maxwell*, 2014 WL 4757429, at *5.

[9] For ease of reference and review, a list of Plaintiff's prior frivolous cases discussed herein, along with citations to certain relevant docket entries, is included in the Mollick Declaration (*see* ¶ 5). A complete list of the more-than-forty (largely frivolous) lawsuits Plaintiff has filed in federal court can be located by searching PACER for civil cases filed by "David Stebbins" and/or "David A. Stebbins."

[10] *See*, *e.g.*, *Polano*, Dkts. 56, 57, 81, 88, 128, 129, 130, 134, 135, 139, 141, 142, 143, 145, 147, 148, 150, 152, 153, 157-1, 158, 161, 176; *Rebolo*, Dkts. 16-19.

1    summarily denied in one-page orders.  *See* 9th Cir. Case *Stebbins v. USDC-CASJ*, No. 11-72595

2    (9th Cir. Nov. 15, 2011), Dkt. 3 (denying petition to order district court to grant his motion for

3    default judgment against Google to confirm a non-existent "arbitration award," even though

4    Google was never served and no arbitration ever occurred), *Stebbins v. USDC-CAOAK*, No. 22-

5    70132 (9th Cir. July 12, 2022), Dkt. 3 (denying petition to order district court not to consider

6    Alphabet's arguments as to why his case should be dismissed), and *Stebbins v. USDC-CAOAK*,

7    No. 22-70269 (9th Cir. Jan. 26, 2023), Dkt. 3 (denying petition complaining that district court was

8    taking too long to rule on a motion).  These cases, and Plaintiff's filings therein, establish a more-

9    than-adequate record for review.

10          **C.     Factor 3: Frivolous and Harassing Filings**

11          "The third factor … gets to the heart of the vexatious litigant analysis, inquiring whether the

12   district court made 'substantive findings as to the frivolous or harassing nature of the litigant's

13   actions.'"  *Molski*, 500 F.3d at 1059 (quoting *De Long,* 912 F.2d at 1148).  "[T]he district court must

14   look at both the number and content of the filings as indicia of the frivolousness of the litigant's

15   claims."  *Id.* (cleaned up; citations omitted).

16          Plaintiff's filing history speaks for itself.  He has brought over 40 lawsuits in federal court

17   alone.[11]   In 2014, the Eighth Circuit noted that he had "proceeded in forma pauperis on at least

18   sixteen complaints that proved meritless."  *Stebbins v. Stebbins*, 575 F. App'x at 705.  Nearly a

19   decade has passed, and that number has grown.  A large portion, if not all, of these cases have been

20   dismissed not just for being meritless, but patently frivolous.  *See, e.g.*, *Stebbins v. Google, Inc.*,

21   2011 WL 5150879, at *4-5 (*sua sponte* dismissal of "clearly baseless" and "frivolous" case based

22   on an "an indisputably meritless legal theory"); *Stebbins v. Texas*, 2011 WL 6130403, at *3

23   (dismissing "frivolous claims" based on "fantastic or delusional scenarios that are clearly irrational

24   and incredible"); *Stebbins v. Bradford*, 2013 WL 3366289, at *2 (dismissing "patently frivolous"

25   claims that were based "entirely on [Plaintiff's] suspicions and theories"); *Stebbins v. Microsoft,*

26   *Inc.*, 2012 WL 12896360, at *1 (dismissing "frivolous lawsuit" that was "wildly untethered from

27   _____

28   [11] This figure is based on a PACER search for civil cases filed by "David Stebbins."

1  any valid interpretation of contract and arbitration law"); *Polano*, 2022 WL 2668371, at *5

2  (dismissing frivolous copyright claims that "caused the Court to expend significant resources

3  addressing [Plaintiff's] meritless claims"); *Rebolo*, 2022 WL 2668372 at *3 (dismissing frivolous

4  copyright claims that "smack[ed] of bad faith and abuse of the Court system").

5         Plaintiff's lawsuits are not only frivolous on the merits, but are mired in nonstop,

6  nonsensical motions that have likely wasted thousands of hours of judicial resources.  He has

7  repeatedly been admonished for this misconduct.  *See, e.g.*, *Stebbins v. Stebbins*, 2013 WL

8  6182991, at *1 ("Not only has [plaintiff] filed numerous cases, but he has also filed over one

9  hundred motions within those cases, some of which have been repetitive, and few of which have

10  had any merit."); *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 ("[T]ime spent dealing

11  with Mr. Stebbins's filings prevents the Court from addressing the genuine, vexing problems that

12  people trust the Court to resolve quickly and fairly."); *Polano*, Dkt. 143 at 2 ("Plaintiff's

13  improperly filed motions preempt the use of judicial resources that might otherwise be devoted to

14  adjudicating the meritorious claims of other litigants."); *id.* Dkt. 134 at 1 (admonishing "Plaintiff's

15  efforts to manipulate the litigation process and his blatant gamesmanship"); *id.* Dkt. 147 at 2

16  (reiterating admonishment regarding "noncompliant and frivolous motions"); *id.* Dkt. 158 at 2 n.3

17  (striking unauthorized filings where "Plaintiff disregarded the Court's order denying his request

18  to file a supplemental brief"); *Rebolo*, Dkt. 19 at 2 (warning of sanctions for Plaintiff's "practice

19  of filing noncompliant, frivolous motions"); *supra* at n.2.  Plaintiff has also exhibited harassing

20  behavior in prior lawsuits.  *See Stebbins v. Stebbins*, 2013 WL 6182991, at *3 (warning Plaintiff

21  "not to yell at court staff or use abusive language in any written or oral communication with the

22  Court or fellow litigants").  In this case, Plaintiff has already filed an *ex parte*, anticipatory motion

23  asking this Court to "protect me from having to litigate" against "bad faith per se arguments that I

24  fear [Google's counsel] will make," which is frivolous on its face.  Dkt. 11 ¶ 3; *see also* Dkt. 18

25  (Google's opposition).

26         For this behavior Plaintiff has already been declared a vexatious litigant and is subject to a

27  pre-filing screening order in the Western District of Arkansas, and he has repeatedly been warned

28  by courts in this Circuit that he will face similar consequences if his abuses continue.  *Rebolo*,

2022 WL 2668372, at *3 (issuing warning); *Polano*, 2022 WL 2668371, at *12-13 (same); *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (warning "the Court will sanction [Plaintiff] next time he files a similarly frivolous complaint"); *Polano*, Dkt. 134 at 1 ("Should Plaintiff continue to dismiss and refile cases in bad faith to obtain a different result, he risks being declared a vexatious litigant in this district."); *id.* Dkt. 143 at 1-2 (warning court may "issue an order to show cause why [Plaintiff] should not be declared a vexatious litigant subject to a pre-filing order"); *id.* Dkt. 147 at 2 (same); *Rebolo*, Dkt. 19 at 2 (same).

But "[n]othing has changed," and "Plaintiff's pattern of conduct has continued for … years, undeterred by warnings, orders, privilege revocations, or any other attempt to ensure compliance with the rules." *Drevaleva*, 2022 WL 15173728, at *5 (declaring *pro se* plaintiff "vexatious" where numerous prior orders "expressly found Plaintiff's cases and appeals frivolous"). It is long past time for Plaintiff to be declared a vexatious litigant in this District.

### D.     Factor 4: The Proposed Order is Narrowly Tailored

"The fourth and final factor in the *De Long* standard is that the pre-filing order must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski*, 500 F.3d at 1061 (affirming order that "appropriately cover[ed] only the type of claims Molski had been filing vexatiously"); *see also Maxwell*, 2014 WL 4757429, at *7 (entering pre-filing order that was "limited to the type of claims the Maxwells have been filing vexatiously and will not deny" them "access to this District's courts on any claim that is not duplicative or frivolous"). Pre-filing orders may also screen claims against particular defendants that a vexatious plaintiff has previously targeted. *See, e.g.*, *Frost*, 2020 WL 1288326, at *9; *Drevaleva*, 2022 WL 15173728, at *6.

A pre-filing order is warranted here. As Judge White noted in *Rebolo*, Plaintiff has seized on copyright law "to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism." *Rebolo*, 2022 WL 2668372, at *3; *accord Polano*, 2022 WL 2668371, at *5. Because Plaintiff is an avid YouTube user, and is widely ridiculed by other YouTube users for his behavior, each of his recent and frivolous copyright lawsuits—including this case, *Rebolo*, and *Polano*—have named YouTube and/or its parent companies Google and Alphabet as defendants (in addition to many others). Plaintiff also sued Google in 2011 to confirm

a non-existent arbitration award.  *Supra* at 3-7.  Given Plaintiff's pattern of asserting frivolous claims, this Court should issue a pre-filing screening order requiring that Plaintiff obtain leave of court before filing, at minimum: (a) any future complaints against Google, YouTube, Alphabet, or their affiliates; and (b) any future copyright claims against any other defendants.

Additionally, this Court should prohibit Plaintiff from proceeding *in forma pauperis* in any future actions in this District except upon a showing of good cause.  *See, e.g.*, *Scott v. Weinberg*, 2007 WL 963990, at *15 (W.D. Wash. Mar. 26, 2007) ("Mr. Scott should be declared a vexatious litigant and prohibited from proceeding *in forma pauperis* in any future action unless the court determines that he is in imminent danger of death or serious bodily injury").  As noted above, by 2014 Plaintiff had "proceeded in forma pauperis on at least ***sixteen complaints*** that proved meritless," *Stebbins v. Stebbins*, 575 F. App'x at 705 (emphasis added), and that number has only increased.  He was granted *IFP* status in *Polano* and *Rebolo*, both of which were ultimately dismissed for being patently frivolous.  This case is the latest example.

Plaintiff's abuse of his *IFP* status "preempt[s] the use of judicial resources that might otherwise be devoted to adjudicating the meritorious claims of other litigants."  *Polano*, Dkt. 143 at 2; *see also In re Sindram*, 498 U.S. 177, 180 (1991) ("*Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources because they are not subject to the financial considerations—filing fees and attorney's fees—that deter other litigants from filing frivolous petitions").  Requiring him to pay filing fees is a narrow and appropriate measure to ensure that Plaintiff thinks twice before filing frivolous lawsuits and motions.  *See Scott*, 2007 WL 963990, at *5 ("If plaintiff is 'unwilling to save [his] money and prepay filing fees, such a decision may be a good indicator of the merits of the case.'") (citing *Rodriguez v. Cook,* 169 F.3d 1176, 1180 (9th Cir. 1999)).

## <u>CONCLUSION</u>

For the foregoing reasons, this case should be dismissed with prejudice and Plaintiff should be declared a vexatious litigant in the Northern District of California.

1   Dated: March 6, 2023

2   Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
3   Professional Corporation

4   By:    _s/ Jason Mollick_

5   Jason Mollick (*pro hac vice*)
Jeremy P. Auster (*pro hac vice*)
6   1301 Avenue of the Americas, 40th Floor
New York, New York 10019
7   Telephone: (212) 999-5800
Facsimile: (212) 999-5899
8   jmollick@wsgr.com
jauster@wsgr.com
9

10  Ryan S. Benyamin
1900 Avenue of the Stars, 28th Floor
11  Los Angeles, California 90067
Telephone: (424) 446-6913
12  Facsimile: (866) 974-7329
rbenyamin@wsgr.com
13

14  *Counsel for Defendant Google LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28