RYAN S. BENYAMIN, State Bar No. 322594
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (424) 446-6913
Facsimile: (866) 974-7329
rbenyamin@wsgr.com

JASON MOLLICK (*pro hac vice*)
JEREMY P. AUSTER (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com
jauster@wsgr.com

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

CASE NO.: 3:23-cv-00322-TLT

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AND TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT**

Judge: Hon. Trina L. Thompson
Date: July 11, 2023
Time: 2:00 p.m.

Action Filed: January 20, 2023

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

A. Factor 1: Purpose and Character of the Challenged Use. ........................................ 1

B. Factor 2: Nature of the Copyrighted Work. ........................................................ 2

C. Factor 3: Amount and Substantiality of the Portion Used. .................................... 2

D. Factor 4: Effect Upon the Market or Value of the Copyrighted Work. .................. 2

ARGUMENT ........................................................................................................... 3

I. COURTS ROUTINELY DISMISS COPYRIGHT INFRINGEMENT CLAIMS THAT TARGET FAIR USE CRITICISM ........................................................................ 3

II. THE CHANNEL ICON IS A FAIR USE OF PLAINTIFF'S LIVESTREAM .................. 4

A. Factor 1: Purpose and Character of the Challenged Use ........................................ 4

B. Factor 2: Nature of the Copyrighted Work .......................................................... 7

C. Factor 3: Amount and Substantiality of the Portion Used ..................................... 8

D. Factor 4: Effect Upon the Market or Value of the Copyrighted Work ................... 9

III. THE COURT SHOULD DECLARE PLAINTIFF A VEXATIOUS LITIGANT ........... 12

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 10

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......... 2, 9, 10, 11

*De Long v. Hennessey*,
912 F.2d 1144 (9th Cir. 1990) .......... 12

*Denton v. Hernandez*,
504 U.S. 25 (1992),
*superseded by statute on other grounds as recognized in*
*Walp v. Scott*, 115 F.3d 308 (5th Cir. 1997) .......... 3, 11

*DraftExpress, Inc. v. Whistle Sports, Inc.*,
2022 WL 16962285 (C.D. Cal. Aug. 2, 2022) .......... 8

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986) .......... 11

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) .......... 5, 8, 9

*Greenspan v. Qazi*,
2021 WL 2577526 (N.D. Cal. June 23, 2021) .......... 5

*Hosseinzadeh v. Klein*,
276 F. Supp. 3d 34 (S.D.N.Y. 2017) .......... 6

*Hughes v. Benjamin*,
2020 WL 4500181 (S.D.N.Y. Aug. 5, 2020) .......... 6

*Hughes v. Benjamin*,
437 F. Supp. 3d 382 (S.D.N.Y. 2020) .......... 3, 5, 7

*Lombardo v. Dr. Seuss Enters., L.P.*,
729 F. App'x 131 (2d Cir. 2018) .......... 6, 8

*Mattel Inc. v. Walking Mountain Productions*,
353 F.3d 792 (9th Cir. 2003) .......... 11

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009) .......... 3

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 6

*Savage v. Council on American-Islamic Relations, Inc.*,
2008 WL 2951281 (N.D. Cal. July 25, 2008) .......... 8, 9, 11

*Schwartzwald v. Oath Inc.*,
2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020) .......... 5, 6

*Scott v. Weinberg*,
2007 WL 963990 (W.D. Wash. Mar. 26, 2007) .......... 15


*Sony Comput. Ent't Am., Inc. v. Bleem, LLC*,
214 F.3d 1022 (9th Cir. 2000) .......... 9

*Stebbins v. Microsoft, Inc.*,
2012 WL 12896360 (W.D. Wash. Jan. 13, 2012) .......... 1

*Stebbins v. Polano*,
2022 WL 2668371 (N.D. Cal. July 11, 2022) .......... 4, 5, 13, 15

*Stebbins v. Rebolo*,
2022 WL 2668372 (N.D. Cal. July 11, 2022) .......... *passim*

*Stebbins v. Stebbins*,
2013 WL 6182991 (W.D. Ark. Nov. 26, 2013) .......... 13, 14

*Stebbins v. Texas*,
2011 WL 6130403 (N.D. Tex. Oct. 24, 2011) .......... 11, 12

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
953 F.3d 638 (9th Cir. 2020) .......... 5

*Weinberg v. Dirty World, LLC*,
2017 WL 5665023 (C.D. Cal. July 27, 2017) .......... 6

**STATUTES**

17 U.S.C. § 101 .......... 10

17 U.S.C. § 107 .......... 5, 12

28 U.S.C. § 1915 .......... 3, 11, 14

**RULES**

Fed. R. Civ. P. 8 .......... 11

Fed. R. Civ. P. 11 .......... 11

Fed. R. Civ. P. 12(b)(6) .......... 3, 5

## INTRODUCTION

In dismissing one of Plaintiff's 40-plus federal lawsuits, one court described his arguments as "wildly untethered from any valid interpretation" of applicable law. *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012). The Ninth Circuit agreed. 520 F. App'x 589 (9th Cir. 2013). The same can be said of Plaintiff's Opposition to Google's Motion to Dismiss. Dkt. 36 ("Opp."). From start to finish the Opposition trips over itself, relying on made-up legal principles and math equations, citing Supreme Court cases for propositions they reject, ignoring other cases that contradict his positions, and refusing to acknowledge facts that are apparent on the face of the Complaint ("Compl."). If the Opposition accomplishes anything, it confirms that the "infringement" about which Plaintiff complains is "plainly fair use criticism"—a conclusion already reached by this District about a virtually identical copyright claim. *Stebbins v. Rebolo*, 2022 WL 2668372, at *3 (N.D. Cal. July 11, 2022). Each of the statutory factors weigh decidedly in favor of dismissal on fair use grounds. In sum:

### A. Factor 1: Purpose and Character of the Challenged Use.

Plaintiff discards common sense in disputing that the phrase "ACERTHORN LAWS" in the challenged icon is criticism of his abusive lawsuits. Reddy Decl. Ex. A (Dkt. 31-4). In so doing, he completely ignores the context of the YouTube channel in which that icon appeared—including allegations of misconduct levied against him in video titles, collections of people he has sued, images ridiculing his physical appearance, and parodic statements that he will "sue you." Mollick Decl. Ex. A (Dkt. 31-2); Reddy Decl. Ex. B (Dkt. 31-5). Plaintiff admits this content is transformative without realizing it, lamenting that the "entire purpose for this channel seems to be to have me put on public display for mockery and degradation, like a circus freak." Opp. ¶ 36. Google does not endorse such behavior (nor Plaintiff's abuse of the litigation process), but "mockery" ***is*** a form of criticism. And unless Plaintiff intended to humiliate himself—which we doubt—he admits that the channel advances a meaning and message that is far different from his copyrighted video. That is what it means for a use to be "transformative" under copyright law.

**B. Factor 2: Nature of the Copyrighted Work.**

The second fair use factor recognizes that some works—like novels, music, or paintings—are closer to the core of copyright than others. Plaintiff's four-hour video staring straight into a fixed camera and discussing video games is plainly outside the core. On top of that, this case is about the alleged infringement of a single frame from that video in which Plaintiff makes an ordinary facial expression—something any human being can do. There is no creativity there.

**C. Factor 3: Amount and Substantiality of the Portion Used.**

The channel icon copies a single frame from a four-hour video, which is de minimis on its face. Plaintiff acknowledges this, but claims that the frame must be considered the "heart" of the Livestream because the alleged infringer saw fit to use it. Opp. ¶ 92. That self-serving logic has no basis in copyright law, and would render this factor in the fair use analysis a dead letter. A still image showing a banal facial expression, which indicates nothing of substance, cannot possibly be the "heart" of a four-hour audiovisual work.

**D. Factor 4: Effect Upon the Market or Value of the Copyrighted Work.**

Plaintiff presses the hardest on Factor 4, but slams headlong into blackletter copyright law. First, he cites *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) for the proposition that market harm is "presumed" when the challenged use is commercial. Opp. ¶ 74. *Campbell* ***rejected*** that presumption; and in any event, there is no allegation that the icon at issue here serves a commercial purpose. 510 U.S. at 591. Second, Plaintiff cites *Campbell* for the proposition that the icon usurps a potential market for derivative critical works—in other words, a market for licensing pieces of his content for purposes of criticizing him. Opp. ¶ 80. Once again, he misreads *Campbell* and its progeny, which held "***there is no protectible derivative market for criticism***." 510 U.S. at 592 (emphasis added). Copyright infringement claims over critical derivative works are barred as a matter of law. That is what this case is about.

"Plaintiff's attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system." *Rebolo*, 2022 WL 2668372, at *3. He has been warned time and again that he will be declared a

vexatious litigant in this District if he continues that abuse. *Id.* This case is the last straw. The Court should dismiss with prejudice and declare Plaintiff a vexatious litigant.

## ARGUMENT

### I. COURTS ROUTINELY DISMISS COPYRIGHT INFRINGEMENT CLAIMS THAT TARGET FAIR USE CRITICISM

A common theme throughout the Opposition—indeed the very first argument Plaintiff makes—is that the Court can only dismiss on fair use grounds if '"it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief."' Opp. ¶ 2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)). This is the first of many instances in which Plaintiff misstates the law. *Twombly* rejected the "'no set of facts' pleading standard … as too lenient." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 456 (2009). Instead, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. His inability to allege plausible facts and theories dooms his Complaint on every fair use factor.

The Court also "shall" dismiss under the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2)(B), if it determines the Complaint is frivolous or fails to state a claim, and need not "accept without question the truth of [Plaintiff's] allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992), *superseded by statute on other grounds as recognized in Walp v. Scott*, 115 F.3d 308, 309 (5th Cir. 1997) (explaining that 1996 amendment to IFP statute "removes some of a federal court's discretion by ***requiring*** the court to dismiss a case if it determines that the action or appeal is frivolous, malicious, or fails to state a claim upon which relief may be granted") (emphasis added); *see also* MTD (Dkt. 31) at 11.

Plaintiff also argues that dismissal on fair use grounds "is exceptionally rare." Opp. ¶ 13. That is another misstatement of the law. While a plaintiff is not required to affirmatively disprove fair use in a complaint, courts routinely dismiss copyright claims under Rule 12(b)(6) when it is apparent from the complaint that the alleged infringement is fair use. *See* MTD at 10 & n.5 (collecting cases); *accord, e.g.*, *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) ("At this stage of the litigation, the Court's task is to determine whether 'the facts necessary to

establish the defense are evident on the face of the complaint,' including any materials properly incorporated into the complaint.") (citation omitted).  Plaintiff knows this, because he spent a third of his Complaint defensively arguing against fair use.  Compl. ¶¶ 35-51.

Applying the correct standard, it is readily apparent from a review of the materials properly before the Court—including Plaintiff's Livestream, the Acerthorn The True Acerthorn channel, and the at-issue channel icon—that the alleged infringement is fair use.

## II.  THE CHANNEL ICON IS A FAIR USE OF PLAINTIFF'S LIVESTREAM

### A.  Factor 1: Purpose and Character of the Challenged Use

Plaintiff spills considerable ink arguing that the phrase "ACERTHORN LAWS"—which the channel icon superimposes around a screenshot of his face—"tell[s] us nothing" about him and therefore cannot be transformative criticism.  Opp. ¶¶ 17-24; *see also* Reddy Decl. Ex. A (channel icon).  That argument is untenable because it requires reading the phrase in a vacuum.  The context of the Acerthorn The True Acerthorn channel confirms what is evident from the channel icon itself: that the phrase is an unmistakable and critical reference to Plaintiff's abuse of the legal system.  *See* MTD at 12-15.

Plaintiff argues that the channel—which he hyperlinks and describes in the Complaint—was not transformative because it contained nothing more than "verbatim, unaltered clips from my videos."  Opp. ¶ 28.  That ignores numerous other pieces of content that blatantly criticized him, including: (i) video titles accusing him of engaging in online misconduct such as doxing and sub-botting[1]; (ii) recommendations to view content posted by defendants in the *Polano* and *Rebolo* cases, coined "Acerthorn's Archenemies" (who themselves have criticized Plaintiff online); (iii) a parodic threat to "gimme money" or "I'll sue you"; and (iv) a banner image mocking his physical appearance.  *See* MTD at 12-14; Mollick Decl. Ex. A (screenshot of channel); Reddy Decl. Ex. B (banner image).  Plaintiff concedes in his Complaint that at least some parts of the channel provided "criticism and commentary about me" that was "transformative."  Compl. ¶ 41.  He

---

[1] "Doxing" is the action of publicizing someone's private identifying information on the Internet.  "Sub-botting" is artificially inflating the number of a channel's views, likes, or subscribers.  Both practices are frowned upon on social media.

cannot now close his eyes to the surrounding context in which the icon appeared. *See Hughes*, 437 F. Supp. 3d at 391-92 (finding fair use on a motion to dismiss where the "critical nature" of a challenged YouTube video was "apparent from the broader context of [defendant's] YouTube channel"); *Schwartzwald v. Oath Inc.*, 2020 WL 5441291, at *4 (S.D.N.Y. Sept. 10, 2020) (finding fair use on a motion to dismiss where defendant reproduced and slightly modified a celebrity photograph on its news website, because the "broader context of the article" showed it was used for transformative purposes).

Though Plaintiff insists that the icon was not transformative, he states elsewhere in the Opposition that the "entire purpose" of the channel that displayed the icon was to mock him. Opp. ¶ 36 ("As evidenced by his video library, his entire purpose for this channel seems to be to have me put on public display for mockery and degradation, like a circus freak."). That resolves Factor 1. The central question is "whether the copier's use ***adds something new***, with a further purpose or ***different character***, altering the copyrighted work with ***new expression, meaning or message***." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1202 (2021) (emphases added; citation omitted; cleaned up). Plaintiff alleges that he created the original Livestream to "exchang[e] opinions about a game called Dark Souls, as well as the skill with which I alleged[ly] handled feedback regarding my prior criticism of that game." Compl. ¶ 36. By stark contrast, the "entire purpose" of the at-issue icon and channel was to mock and degrade him. Opp. ¶ 36. That is regrettable, but it is a paradigmatic transformative purpose protected by law. *See, e.g.*, *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 650 (9th Cir. 2020) (because defendant "created a new work with new meaning, it was a transformative use"). As Judge White noted, "Plaintiff clearly feels aggrieved by comments made about him online …, but that does not mean Plaintiff has a viable copyright claim." *Stebbins v. Polano*, 2022 WL 2668371, at *5 (N.D. Cal. July 11, 2022).

Further, Plaintiff admits that the transformative purpose specifically included mockery. Opp. ¶ 36. ***Mockery is a form of criticism***, and thus falls in the heartland of fair use. 17 U.S.C. § 107. Courts consistently dismiss copyright claims under Rule 12(b)(6) where the alleged infringement is plainly intended for mockery. *See, e.g.*, *Greenspan v. Qazi*, 2021 WL 2577526, at

*11 (N.D. Cal. June 23, 2021) (finding fair use where defendant "expressed something new" by using portions of plaintiff's autobiography to "mock" him); *Schwartzwald*, 2020 WL 5441291, at *6 (finding defendant's use of a celebrity image was "transformative because it used the Photograph in service of its dual goals of mocking both [the celebrity] and those who fixate over such suggestive photos of him"); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47 (S.D.N.Y. 2017) (dismissing on fair use grounds because "anyone seeking to enjoy [plaintiff's video] on its own will have a very different experience watching the [defendant's] video, which responds to and transforms the [plaintiff's] video from a skit into fodder for caustic, moment-by-moment commentary and mockery"); *Hughes v. Benjamin*, 2020 WL 4500181, at *3 (S.D.N.Y. Aug. 5, 2020) (awarding attorneys' fees to defendant after dismissing on fair use grounds because "the complaint describes [defendant's] video as an effort to mock and discredit [plaintiff], two strong indicators that the work constituted fair use as criticism").[2]

Plaintiff's additional arguments regarding Factor 1 are equally meritless.  First, Plaintiff claims that the channel icon is not transformative because there was no "creative effort" behind it. Opp. ¶ 21.  The creativity of the allegedly infringing work is irrelevant.  "[E]ven making an exact copy of a work may be transformative so long as the copy serves a different function than the original work." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007).  What matters is whether the icon served a transformative purpose.  It did.

Second, Plaintiff offers the (unpleaded) assertion that Google profited from the alleged infringement, since Google is a commercial enterprise and serves advertisements on YouTube. Opp. ¶ 34.  That is also irrelevant.  The question is whether the ***direct*** infringer engaged in fair use, not Google.  Plaintiff does not (and cannot) allege that the icon was used by the channel operator for a commercial purpose, nor does he make that argument in his Opposition.  Regardless, even if

---

[2] *See also Lombardo v. Dr. Seuss Enters., L.P.*, 729 F. App'x 131, 132 (2d Cir. 2018) (affirming finding of fair use in declaratory judgment action where defendant created a play to parody and "mock" Dr. Seuss books); *Weinberg v. Dirty World, LLC*, 2017 WL 5665023, at *4  (C.D. Cal. July 27, 2017) (finding fair use on summary judgment where "the copyrighted work was used to display Plaintiff and his wife's wealth, and their luxurious lifestyle in Hollywood … whereas the Post [on defendant's website] uses the exact same image of Plaintiff and his wife to ridicule, mock, and critique the two figures").

the icon did serve some tangential commercial purpose, Factor 1 would still favor fair use given its transformative purpose. *See* MTD at 14 n.6 (citing cases).

Third, Plaintiff claims that the channel's supposed "unclean hands" "is an exception" to fair use and "perhaps the most important sub-factor of the entire First Factor." Opp. ¶¶ 38, 40. Not so. The Supreme Court and Ninth Circuit both recently explained that an alleged infringer's supposed bad faith has little, if any, relevance to the fair use analysis. MTD at 14-15 (discussing cases). Plaintiff cites no case law supporting his claim that "unclean hands is a counter-defense to fair use" (Opp. ¶ 38), and Google is not aware of any.

Fourth, Plaintiff insists that suppressing criticism was not his "sole" and "exclusive" motivation for filing this lawsuit (though tellingly, he does not deny it is ***a*** reason). Opp. ¶¶ 4-8, 43. While Plaintiff's own misconduct is relevant to Google's request to declare him a vexatious litigant, it is irrelevant to the fair use analysis. What matters is whether the channel used the screenshot from Plaintiff's Livestream for a transformative purpose. It did.

**B. Factor 2: Nature of the Copyrighted Work**

Plaintiff insists that despite having virtually no production value, his Livestream interview is highly creative because it contains his "opinions and commentary." Opp. ¶¶ 51-52. Oddly, the only case he cites is *Hughes v. Benjamin*, which dismissed infringement claims on fair use grounds where the defendant used portions of plaintiff's YouTube videos to criticize her—exactly what happened here. That court deemed Factor 2 "neutral" because the plaintiff's video had production value, but the question was "of little import" because the usage was transformative. 437 F. Supp. 3d at 392-93. The same rationale would apply here even if the Court assumes for argument's sake that the Livestream is creative (which it is not).

To prove that the Livestream is "highly creative," Plaintiff reduces Factor 2 to a "simple math problem." Opp. ¶ 52. He invents a "creativity score," whereby anything 100 or more is "highly creative." Alas, he assigns his Livestream a score of 278.9, which "makes it eligible to be considered 'highly creative,' twice over, with creativity to spare." *Id*. This is nonsense. Instead of made-up, self-indulgent math, the Court can simply watch the Livestream and see that it has minimal creative value, containing four hours of banal discussions about video games. That does

not mean it has so little creativity that it is not copyrightable at all. It simply means that—compared to novels, music, drama, and other high art—the Livestream is not at the "core of copyright." *Oracle*, 141 S. Ct. at 1202. Factor 2 "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Lombardo*, 729 F. App'x at 132-33; *see also* MTD at 15-16.

Perhaps recognizing that the Livestream is of minimal creativity, Plaintiff argues that what matters is not the creativity of the overall video, but the specific portion copied. Opp. ¶¶ 59-63. If that is true, then the infringed content strays ever further from the core of copyright. The only portion copied is a still shot of Plaintiff sitting in a chair, looking straight into a fixed camera, and making an ordinary facial expression. Any human being can do that. It is not creative at all.

### C. Factor 3: Amount and Substantiality of the Portion Used

Plaintiff concedes, as he must, that the challenged icon utilized only a single frame from a four-hour interview about video games. Opp. ¶ 64. That alone is enough to conclude that Factor 3 heavily favors fair use. MTD at 16-17.

Plaintiff's only response is that this single frame constitutes the "heart" of the interview. Opp. ¶¶ 69-70. According to Plaintiff: since the channel operator chose to use that frame, the frame was necessarily the most interesting and memorable part of the video. *Id.* ¶ 69. By that logic, Factor 3 would never favor fair use, because anytime someone uses a piece of content—no matter how insignificant to the overall work—a plaintiff could simply claim that the piece was necessarily the heart of it. Plaintiff cites no authority to support this theory, other than the outdated "no set of facts" standard. *Id.* ¶ 70.

Plaintiff cannot plausibly suggest that a single facial expression made during a four-hour interview, which has nothing to do with the underlying content, constitutes the "heart" of the Livestream. As explained in *DraftExpress, Inc. v. Whistle Sports, Inc.*—which the Opposition ignores—"[t]he heart of an interview is the interviewee's substantive answers to questions, especially any answer that is particularly interesting or unique …." 2022 WL 16962285, at *4 (C.D. Cal. Aug. 2, 2022); *see also* MTD at 17 (citing *Savage v. Council on American-Islamic*

*Relations, Inc.*, 2008 WL 2951281, at *7 (N.D. Cal. July 25, 2008) (four-minute excerpt of a two-hour radio talk show was not the "heart of the original work"); *Sony Comput. Ent't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028 (9th Cir. 2000) (single screenshot from a video game featuring multi-hour gameplay was "of little substance to the overall copyrighted work")). And even if the icon did utilize the "heart" of the Livestream, Factor 3 would still favor fair use because it was "tethered to a valid, and transformative, purpose" of criticizing Plaintiff. *Oracle*, 141 S. Ct. at 1205; *see also Campbell*, 510 U.S. at 589 ("[W]e fail to see how the copying can be excessive in relation to its parodic purpose, even if the portion taken is the original's 'heart.'"); *accord* MTD at 16-17 (collecting cases finding fair use where defendants used much larger portions of copyrighted works for transformative purposes).

**D. Factor 4: Effect Upon the Market or Value of the Copyrighted Work**

Plaintiff concedes there is no existing commercial market for his Livestream, much less for a single frame from it. Opp. ¶¶ 71-73. Instead, he claims there might be a "potential" market at some unknown point in the future. *Id.* That is not how this factor is examined. If it were, it would again always favor the copyright claimant, because anyone could say that the use in question might be licensable in the future.

Plaintiff attacks a single case cited by Google, *Savage v. Council on American-Islamic Relations, Inc.*, which dismissed where the "plaintiff fail[ed] to allege or suggest an impact on the actual or potential sale, marketability, or demand for the original, copyrighted work." 2008 WL 2951281, at *9. Plaintiff says this "contradicts" other case law. Opp. ¶ 74. To the contrary, *Savage* is consistent with a litany of cases (misread by Plaintiff) dismissing copyright claims on fair use grounds where the alleged infringement cannot plausibly cause the type of market harm that copyright law is meant to protect. MTD at 18-19 (collecting cases).

Here, that is the case. As to the Livestream as a whole, there is simply no way that a single frame from a four-hour video could usurp the market for the original—regardless of whether that market is real or potential. A user who wishes to consume the content of the Livestream would not view the Acerthorn The True Acerthorn channel icon (or the rest of the channel) instead. Even Plaintiff does not argue otherwise. Instead, he cites *Campbell v. Acuff-Rose Music, Inc.* for the

proposition that "when the use is commercial, likelihood of market harm may be presumed"; and since Google is a "commercial, for profit entity," market harm must be presumed here. Opp. ¶ 74 & n.12. This is wrong for two reasons. First, Google is not the alleged direct infringer—the channel operator is, and there is no suggestion that he posted the icon for a commercial purpose. Second, Plaintiff completely misreads *Campbell* just like he misreads *Twombly*. *Campbell* ***rejected*** the market-harm presumption, finding that it only applies "when a commercial use amounts to a mere duplication of the entirety of the original"—which did not occur here. 510 U.S. at 591. "No presumption or inference of market harm ... is applicable to a case involving something beyond mere duplication for commercial purposes." *Id.* (cleaned up).

Recognizing that a single screenshot cannot possibly usurp the market for a four-hour video (if there even were one), Plaintiff argues that the screenshot might have an "effect on the potential ***derivative*** market." Opp. ¶ 80 (emphasis added).[3] Again citing *Campbell*, he claims that "[t]he right to charge a license fee for use of channel icons is a derivative market which this icon clearly intrudes upon." *Id.* Plaintiff insists that he might someday exploit a market for pictures of his face, and that he would have gladly issued a license to the direct infringer if asked. *Id.* ¶¶ 75, 82-83, 85. He chides Google for failing to offer "any proof that, as a matter of fact, it is physically impossible for critical works to serve as a market substitute for derivative works." *Id.* ¶ 77.

Once again, Plaintiff misreads *Campbell* and the law of fair use. His reliance on a "potential derivative market" for "critical works" is crippling to his own case, not Google's. It is binding law, established by the very case he cites, that "***there is no protectible derivative market for criticism***." *Campbell*, 510 U.S. at 592. As the Supreme Court explained:

> This distinction between potentially remediable displacement and unremediable disparagement is reflected in the rule that there is no protectible derivative market for criticism. The market for potential

[3] "A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

> derivative uses includes only those that creators of original works would in general develop or license others to develop. Yet the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market. "People ask … for criticism, but they only want praise." S. Maugham, Of Human Bondage 241 (Penguin ed. 1992).

*Id.* at 592 (finding that appellate court erred by considering harm to the market for derivative parodies). The Ninth Circuit applied the same rule in *Mattel Inc. v. Walking Mountain Productions*, where the maker of Barbie dolls sued a photographer who published sexualized pictures of Barbie. 353 F.3d 792 (9th Cir. 2003). The Court found no cognizable market harm, and thus fair use, because the pictures "could only reasonably substitute for a work in the market for adult-oriented artistic photographs of Barbie. We think it safe to assume that Mattel will not enter such a market or license others to do so. As the Court noted in *Campbell*, 'the market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop.'" *Id.* at 806. Accordingly, "[a]ny potential claims on the market impact of derivative works are ***barred as a matter of law*** because 'there is no protectible derivative market for criticism' and impairing such a market by the effectiveness of critical commentary is not relevant under copyright law." *Savage*, 2008 WL 2951281, at *9 n.2 (emphasis added; citing *Campbell*). In short, "[c]opyright law is not designed to stifle critics." *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986).

To be clear, the notion that there is an untapped commercial market for pictures of David Stebbins is implausible and could not pass muster under Federal Rules 8 and 11. It is also clearly "frivolous" for purposes of Section 1915(e)(2)(B). *Denton*, 504 U.S. at 32. Plaintiff is not a celebrity. That anyone would pay for a picture of his face is—as other courts have described his claims—"fantastic" and "delusional." *Stebbins v. Texas*, 2011 WL 6130403, at *3 (N.D. Tex. Oct. 24, 2011). But even if there were such a market, it would not matter. Plaintiff cannot control the market for derivative works that mock him. If it were otherwise, he (or any copyright owner)

could dictate the manner in which others criticize him, or charge an extortionate fee for the privilege of engaging in protected speech. That would violate a fundamental precept of copyright law—that "use of a copyrighted work, including such use by reproduction in copies … for purposes such as criticism … is not an infringement of copyright." 17 U.S.C. § 107.

**III. THE COURT SHOULD DECLARE PLAINTIFF A VEXATIOUS LITIGANT**

As to Google's request to declare Plaintiff a vexatious litigant, the Opposition is most notable for what it does not say. Plaintiff does not dispute that he has been given fair notice and an opportunity to be heard on the issue, thus conceding Factor 1 of the *De Long* test. MTD at 20-21 (citing, *e.g.*, *De Long v. Hennessey*, 912 F.2d 1144, 1147-48 (9th Cir. 1990)). He does not dispute that the Court has a sufficient record to evaluate his filing history, thus conceding Factor 2. *Id.* at 21-22; *see also* Mollick Decl. (Dkt. 31-1) ¶ 5. He does not even try to defend the frivolous and harassing nature of his prior cases, thus conceding Factor 3. MTD at 22-24.

Plaintiff's only response as to the nature of his filings is that ***this*** 40th-something case is not frivolous, so it cannot be "the last straw." Opp. ¶ 98. As shown, this case is indeed frivolous like all the others. Judge White already dismissed a virtually identical claim against YouTube in *Rebolo*, where Plaintiff accused a different channel of copying a screenshot of his face for an icon. *Rebolo* Dkt. 15 ¶ 128. *Rebolo* also featured claims against the Acerthorn The True Acerthorn channel. *Id.* Dkt. 16-1 ¶¶ 154-59. These claims were so frivolous that Judge White dismissed them in a screening order, finding that the postings were "plainly fair use criticism" and that "Plaintiff's attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system." *Rebolo*, 2022 WL 2668372, at *3. Judge White explicitly warned Plaintiff "that if he persists in filing frivolous or meritless lawsuits, the Court may impose sanctions, bar him from filing further actions without prior approval, and/or deem him a vexatious litigant." *Id.* Yet here he is, filing the same claim, in the same court, against the same defendant (albeit this time against YouTube's parent company, Google).

The Opposition only proves the point. To "show how non-frivolous this case is," Plaintiff attaches email correspondence with a "guy" who "claims to be a lawyer." This "guy" identified a

flaw in Plaintiff's claim, but he said nothing about fair use. Ergo, Plaintiff claims that he "consult[ed] with legal counsel" who "admits that the icon isn't fair use," so the case is not frivolous. Opp. ¶¶ 99-100. This argument speaks for itself.

Equally baseless is Plaintiff's suggestion that this case has merit because it was not screened under the IFP statute, or because Judge White did not deem it "related" to *Polano* and *Rebolo*. Opp. ¶¶ 22, 103. There have been no screening orders evaluating whether the content at issue is fair use, nor have any judges had the benefit of briefing on that issue until now. The same thing happened in *Polano*, where Judge White initially allowed Plaintiff's claims to proceed, only to be informed later by YouTube and Alphabet that Plaintiff registered a copyright in the video at issue under false pretenses. 2022 WL 2668371, at *5 ("Plaintiff relies heavily on the earlier screening order in which the Court permitted Plaintiff's copyright claim to proceed. However, as the Intervenors note, at the time the Court screened the complaint, it was not aware that Plaintiff's registration was based on an inaccurate application.").

This is a hallmark of Plaintiff's cases. Unlike most vexatious, *pro se* litigants, "Mr. Stebbins's extensive experience in filing lawsuits has equipped him with some knowledge of the law, and his skills in drafting are often sufficient to at least raise a question as to factual matters alleged that could constitute a claim, thereby preventing dismissal of the complaint as frivolous upon initial review." *Stebbins v. Stebbins*, 2013 WL 6182991, at *1 n.1 (W.D. Ark. Nov. 26, 2013) (declaring Plaintiff a vexatious litigant). But that hardly means his cases are not frivolous:

> Mr. Stebbins argues that a majority of the cases he has filed in this District have not been found to be frivolous upon initial review. This does not mean, however, that in the cases where Mr. Stebbins was granted *in forma pauperis status*, his claims were not frivolous. The fact that Mr. Stebbins has previously been given leave to proceed *in forma pauperis* in certain cases merely means that his claims in those cases were not patently frivolous based on an evaluation of Mr. Stebbins's complaint alone and giving Mr. Stebbins every benefit of the doubt. The fact remains that Mr.

> Stebbins has not succeeded on the merits in any of the numerous cases he has filed in this District…. [T]he fact remains that he has abused the system by continuing to file unmeritorious claims and motions. Mr. Stebbins's history of unsubstantial and vexatious litigation is an abuse of the permission granted to him to proceed as a pauper in good faith under 28 U.S.C. § 1915(d).

*Id.* at *1 (citation omitted; cleaned up). Here too, Plaintiff demonstrated enough drafting skill to evade initial screening, thus requiring Google to spend thousands in attorneys' fees revealing that his case is utterly frivolous. This is why his abuse of the legal system is uniquely pernicious, and must be stopped.

Along the same lines, Plaintiff argues that a pre-screening order is unnecessary because it would be redundant of standard screening of IFP cases under Section 1915. Opp. ¶ 102. Under that logic, no indigent litigant would ever be declared a vexatious litigant, which is not the law. Nor have IFP screening orders provided an adequate safeguard, for reasons just explained. A vexatious litigant order will signal future courts to take a much closer look at the merits of Plaintiff's filings before allowing them to proceed.

Plaintiff also assures the Court that he uses the Pro Bono Office "regularly," which "provides a sufficient safeguard against patently frivolous filings." Opp. ¶¶ 105-06. That hasn't stopped him before, and there is no reason to think it will in the future.

Lastly, Plaintiff argues that it is inappropriate to bar him "from ever proceeding in forma pauperis in this court ever again, no matter who the defendant is." Opp. ¶ 104. That is not what Google asks for. Google requests an order prohibiting Plaintiff "from proceeding *in forma pauperis* in any future actions in this District ***except upon a showing of good cause***." MTD at 25 (emphasis added); *see also* Proposed Order (Dkt. 31-6) ¶ 2(b). If Plaintiff has a legitimate complaint about something that is truly harming him, then of course he should receive IFP status if his financial circumstances warrant it. But the complaints he is filing—over someone posting unkind pictures of his face—do not justify waiving the bill. If Plaintiff wants to file dozens of lawsuits and hundreds of motions over trivial grievances, he should pay a filing fee like everyone

else. And if he is "unwilling to save [his] money and prepay filing fees, such a decision may be a good indicator of the merits of the case." *Scott v. Weinberg*, 2007 WL 963990, at *5 (W.D. Wash. Mar. 26, 2007). IFP status is not a free pass to burden courts and defendants with trivial lawsuits that judicious, paying litigants would never file.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this case with prejudice and declare Plaintiff a vexatious litigant in the Northern District of California.[4]

Dated: March 27, 2023

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *s/ Jason Mollick*

Jason Mollick (*pro hac vice*)
Jeremy P. Auster (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com
jauster@wsgr.com

Ryan S. Benyamin
1900 Avenue of the Stars, 28th Floor
Los Angeles, California 90067
Telephone: (424) 446-6913
Facsimile: (866) 974-7329
rbenyamin@wsgr.com

*Counsel for Defendant Google LLC*

[4] Plaintiff will likely attempt to file an unauthorized surreply of some form. In *Polano*, he made numerous attempts to file a surreply on Alphabet and YouTube's dispositive intervention motion. *Polano* Dkts. 148, 152. The court denied his request (*id.* Dkt. 150), so Plaintiff filed one anyway under the guise of an "Objection." *Id.* Dkt. 153; *see also* Dkt. 154 (opposition). The court admonished him for disregarding its orders and struck the unauthorized filings. 2022 WL 2668371, at *2 n.3. Google will oppose any such efforts here.