David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947          acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                              PLAINTIFF

VS.                           Case 3:23-cv-00322-TLT

GOOGLE, LLC                                                                DEFENDANTS

### MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion for Partial Summary Judgment in the above-styled action.

### RELIEF REQUESTED

For this motion, I ask the Court to declare the following true as a matter of law:

1. First, that the ATTA YouTube channel, as a whole, was not a "fair use channel," by reason if its video library having precisely zero claim to fair use.
2. Because of this, the icon which is the subject of this lawsuit cannot be considered "part of an otherwise fair use whole," as I alluded to in ¶¶ 43-51 of the Complaint (Dkt. 5), and therefore must stand as fair use on its own merit in order to be considered fair use. The Defendant cannot rely on the "broader context of the YouTube channel," like they attempt.

### UNDISPUTED FACTS

1. On May 16, 2021, I did a live stream on Twitch, which I later transferred to Youtube, known as "Acerthorn's Credibility as a Reviewer (w/ Montyspa on Co-Commentary)" (henceforth known as "the original work"). As of the time of this writing, this video can be found at the url of https://www.youtube.com/watch?v=iDKSx4oi-r0.

2. At timestamp 2:17:55 – 2:18:23 of the original work, I can be seen giving a smug smile while I put my fingers together in a very smug manner (henceforth known as "the face").

3. On or around April 10, 2022, another YouTuber (the direct infringer) changes his channel's name to "Acerthorn the True Acerthorn," or ATTA for short.

4. The direct infringer took a screenshot of the face and appropriated it as his channel icon (henceforth known as "the icon").

5. The ATTA channel's video library was comprised mostly of verbatim uploads of clips from my videos, and even wholesale copies of the videos themselves, with no alterations or modifications whatsoever. In their Motion to Dismiss, as well as their Reply in support of same, the Defendant Google LLC appears to concede to this fact. Instead, the defendant insists that the other elements of the channel (e.g. the "About" page, the "Acerthorn's Archnemeses" section, etc.) are themselves fair use. See Dkt. 41, p. 4, line 16 through p. 5, line 7. I dispute this allegation, but for the purposes of this motion, I do not believe (and I am hopeful the Court will agree with me after it reads the upcoming arguments) that this is a *material* fact, and therefore, should not preclude partial summary judgment on this issue.

## SUMMARY OF ARGUMENT

6. In my Complaint (Dkt. 5), I conceded that the icon could be fair use if it was considered "part of an otherwise fair use whole," in other words, if the channel as a whole was a "fair use channel." The Defendant admits that the ATTA channel's video library is absolutely not fair use, but instead claims the other elements of the channel cause it to be considered a "fair use channel."

7. In fact, it is the video library, not the other elements of the channel, that should determine whether the channel is a "fair use channel." Every other element of a channel must pass as fair use on its own to be considered fair use. Any time an element of a YouTube channel seeks vicarious fair use status by being declared "part of an otherwise fair use whole," it must look to the video library for such status.

8. Because, by the Defendant's own admission, the video library cannot be considered fair use, the channel as a whole cannot be considered a "fair use channel," which means the icon cannot be considered "part of an otherwise fair use whole."

9. This does not mean the Defense cannot claim fair use. But it does mean that the icon must pass for fair use all on its own, without reference to the rest of the channel, in order to be considered fair use.

## ARGUMENT

10. Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56. This means there are two ways to dispose of a fact on summary judgment: I can either show that the fact is not genuinely disputed, or I can show that the fact is not material.

11. Partial summary judgment can be used to summarily block the Defendant from pressing a defense in the future, preventing a waste of time and money litigating a defense that doesn't matter.

### My previous concession regarding "part of an otherwise fair use whole."

12. In my Complaint, I conceded that a channel icon may not need to be fair use on its own, if it could be considered "part of an otherwise fair use whole." See Dkt. 5, ¶ 43. Playing into this, the Defendant insists that the other elements of ATTA's channel *except* for the video library constitute fair use, and therefore, the channel as a whole is a "fair use channel," negating the need for the icon to be fair use under its own power.

13. However, in doing so, the Defendant concedes that ATTA's video library is, indeed, as I described it: "nothing more than verbatim, unaltered clips from my videos." See Dkt. 41, p. 4, lines 17-18. Therefore, this fact is not in genuine dispute; it is proven by the Defendant's own admission.

14. That just leaves the channel's other elements. While I dispute that these other elements are fair use, for the reasons set forth below, I believe that this is not a material fact worth considering, and therefore should not preclude partial summary judgment on this defense.

### The "heart" of a "whole channel"

15. The reason I believe it is not material is simple: When it comes to a YouTube channel, the video library is, hands down, the most important element of said channel, to the point where literally all other elements are 99% inapposite to determining the channel's overall status in the eyes of the law.

16. Nobody goes to a YouTube channel just to read its "About" page, or to check out the channel artwork. People subscribe to YouTube channels for their video content.

17. Moreover, the videos are the primary means through which viewers discover new channels to subscribe to. Whether it be on the home page, the shorts feed, search results, or the "suggested videos" column found on the right side of every YouTube watch page, the first thing you see as you browse YouTube is a selection of videos that are recommended for you to watch. These videos serve as new viewers' first point of contact for new YouTube channels, and only by being impressed by the first video do the vast majority of YouTube viewers navigate to the channel itself.

18. Even when they navigate to the channel itself, they are primarily doing so in order to find more videos to watch, not to check out any of the channel's other elements. The closest you can get to a secondary element that most viewers are interested in are playlists, but even they are just there to facilitate watching more videos.

19. Almost nobody ever goes to or takes any interest in a YouTube channel for anything other than the video library. The other elements of a channel are so incidental that, at best, they could serve as a tie-breaker if it was a toss-up whether the video library could be considered fair use. If the Court was not comfortable making a call on the video library's overall status, it might turn to other channel elements to help make its determination. But the other elements cannot save an otherwise clear-cut case of unfair use and bring it into the realm of fair use.

**Book example**

20. To help illustrate what I mean, let's take a hypothetical example involving books:

21. Imagine if there was a book, written by X author, who is suing some defendant for reprinting his book for profit. In this hypothetical scenario, most of the elements of the infringing book were slightly modified. The cover art on the front, the blurp on the back, the "About the Author" page, the dedications page, even the chapter titles, were all slightly modified in order to make them arguably parodic. But the story itself – the part that most people typically read whenever they "read a book" – consisted solely of the infringer directly copying and pasting the entirety of the plaintiff's story, word for word, from his original book. The Defendant in that case argues that, because the other elements of the book were transformative, that means the book as a whole should be considered a "fair use book."

22.     If such a case were to ever come before this Court, this Court would undeniably throw the book at the defendant. Even if the other elements of the book were fair use (and even that would have to be litigated), that doesn't matter. The story is the most important part of any book, and so that is what must be transformative in order for the book as a whole to be considered a "fair use book."

23.     In the instant case, I am not suing directly for the videos themselves, but that's mostly because most of the videos are unregistered. However, aside from that one (mostly clerical) difference, the analogy still holds. Just as the story is the most important part of a book, the video library is likewise the most important part of a YouTube channel, which means the video library must be fair use in order for the channel as a whole to be a "fair use channel."

### Reverse YouTube channel example

24.     Here is another example that is slightly closer to what I am actually suing over. Imagine if I actually had most of these works registered, so instead of the icon, I was actually suing over the videos themselves. But the Defendant still pressed the same defense it is pressing here: That the other elements of the channel all constitute fair use criticism, and therefore, that the channel as a whole is a "fair use channel," meaning that the videos themselves don't need to be transformative on their own.

25.     Such an argument would, of course, be patently frivolous. Obviously, the videos cannot benefit from second-hand fair use from the other channel elements, because the videos are the most important part of a YouTube channel! At best, the other channel elements could benefit from second-hand fair use if the video library was majority fair use, but certainly not the other way around.

26.     These two examples clearly demonstrate that there is only one conclusion of law the Court can reasonably reach in this case: In order to be considered a "fair use channel," the videos, not any of the other channel elements, are what need to be majority fair use. Since, by the defendant's own admission, that is not the case here, the Court should summarily judge the channel as not being a "fair use channel," foreclosing the Defendant's hopes of obtaining second-hand fair use.

### The Defense can still argue fair use

27.     That is not to say that the Defendant's case for fair use is dead in the water. It just means that, in order to get fair use, the Defendant must prove that the icon itself stands up as fair use entirely on its own.

28.     The Defendant appears to believe that it has a decent shot at getting this. The way it defends the "Acerthorn Laws" text overlay as critical clearly shows that they believe the icon can be fair use all on its own. However, going forward, the Defendant should not be allowed to rely on the "broader context of [ATTA]'s YouTube channel, where it was posted," since by granting this Motion for Partial Summary Judgment, the Court will have already declared that to not be helpful to the Defendant's case.

### CONCLUSION

29.     In conclusion, I ask that the Court summary adjudge that the ATTA channel as a whole is not a "fair use channel," and therefore, that all other elements of the channel are entirely irrelevant to determining whether the icon is fair use.

30.     Wherefore, premises considered, I respectfully pray that this Motion be granted, and all other relief to which I may be entitled.

So requested on this, the 3rd day of April, 2023.

*/s/ David Stebbins*
David Stebbins (pro se)
