David Stebbins (pro se Plaintiff)   123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947   acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                          PLAINTIFF

VS.                          Case 3:23-cv-00322-TLT

GOOGLE, LLC                                                              DEFENDANTS

### MOTION TO VACATE JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion to Vacate Judgment in the above-styled action.

### Grounds for Relief

1.  A judgment can be vacated under Fed.R.Civ.P. 60(b) for, among other things …

    (a)   "mistake, inadvertence, surprise, or excusable neglect" (FRCP 60(b)(1))

    (b)   "any other reason that justifies relief" (FRCPY 60(b)(6))

2.  Another grounds for relief of judgment is that "it is based on an earlier judgment that has been reversed or vacated." See FRCP 60(b)(5). This judgment was based, at least in part, on the judgment in the case of Stebbins v. Polano, which is currently in appeal. Therefore, by the time this Court gets around to ruling on this motion (which, if this Court's track record is any indication, will likely be sometime in summer of next year) there is a chance this grounds for vacation might also be applicable.

3.  The Court has committed egregious oversights in its disposition of this case. It has, on numerous occasions, made the finding that I failed to address any issues I did in fact address, failed to cite legal authorities that I did in fact cite, and all the while, hypocritically failing to address multiple arguments I presented.

4.  The Court has also considered irrelevant factors when declaring me a vexatious litigant, while also failing to construct a sanction that is narrowly tailored to the specific abuse it found.

5.  For all of these reasons, the Court should vacate, or at the very least modify, its order dismissing the case with prejudice and declaring me a vexatious litigant.

**Federal courts are a one-party consent jurisdiction. Therefore, I ask the Court to revoke Dkt. 72.**

6.  First, the Court has expressed egregious concern over my recording of the 26(f) conference, finding this recording to be "highly irregular and inappropriate." The Court ordered me to immediately remove the recorded phone call from YouTube, and I have done that now, but I also ask the Court to reconsider its position.

7.  First, I wish to point out that, while the defense counsel never prospectively consented to being recorded, they never objected to it either, even after it was brought to their attention through the same court filings that the judge became aware of it. Therefore, this is tantamount to constructive consent, under the legal maxime "qui tacet consentitur videtir."

8.  But even barring that, I wish to bring to the Court's attention that federal court is a one-party consent jurisdiction. See https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/

> "Federal law (18 U.S.C. § 2511) requires one-party consent, which means you can record a phone call or conversation so long as you are a party to the conversation. If you are not a party to the conversation, you can record a conversation or phone call only if at least one party consents and has full knowledge that the communication will be recorded. The statute also prohibits recording conversations with criminal or tortious intent."

9.  As a result, I broke absolutely no laws whatsoever in the recording of this conversation. The judge, in her personal capacity, is free to hold whatever personal feelings she wants regarding clandestine recordings. But the Court cannot legislature from the bench. If something is not illegal, then it's not illegal. Period.

10. To support its claim that the clandestine recording was against the law, the Court cites a California state statute. However, that statute is inapplicable for two reasons. First, because this was clearly part of a federal civil proceeding, federal law supersedes state law, and as I mentioned above, federal courts are a one-party-consent jurisdiction. Second, even if state law were applicable, it is the State of Arkansas, not the State of California, which would have personal jurisdiction over the case, seeing as the recording itself happened on Arkansas soil. I might have uploaded it to a Californian website (YouTube), but it is clearly the recording itself,

not the uploading thereof, which the Court takes issue with, and the recording itself is subject exclusively to the jurisdiction of Arkansas' state and federal courts.

11.  And as the Court can see from the link above, Arkansas is a one-party-consent state, just like federal courts.

12.  I therefore ask the Court to revoke Dkt. 72. It is an overstep of judicial authority.

**The Court ADMITS that I am being harassed, and that I am indeed**
**13. the victim not the perpetrator.**

14.  Before I continue with this motion, I wish to preface the rest of it with something that will permeate the arguments contained herein from this point forward: The Court openly admits that I am indeed the victim of harassment. Unlike the "qui tacet consentitir videtir" issue described above, this is not merely a lack of denial being interpreted as constructive consent, but rather a positive and affirmative admission. For example, the Court writes …

   (a)  "[I]t appears that the motive for Plaintiff's filing of the instant and similar lawsuits are to stop harassment from other users online."

   (b)  "Plaintiff stated that he seeks to stop the harassment directed against him."

   (c)  "[T]he Court is cognizant of the dangers of cyberbullying."

15.  This Court insists that the harassment I have suffered is not relevant, but it admits that it's true.

16.  That being said, I find the Court's complete lack of empathy to my plight to be downright heartless. The Court cites to no authority stating that harassment is entirely irrelevant to copyright law (which is ironic, considering how often you admonish me for allegedly failing to cite to any legal authorities), so until you do so, I still insist that the Court should have *discretion* to consider the harassment I've suffered. The fact that the Court refuses to exercise its discretion on the side of empathizing with the man who it freely admits is being victimized by absolutely abhorrent cyber harassment is nothing short of callous, and only serves to enable the harassment in the future.

**The Court failed to consider whether leave to amend the complaint should be granted.**

17.  When dismissing the case with prejudice, the Court did not consider whether leave to

amend should be granted. Yes, it denied my motion for leave to amend, but it only did so on the grounds that the pleadings for the motion to dismiss have closed. But the law clearly states that a plaintiff should be given leave to amend the complaint, even after the motion to dismiss has been fully briefed, so the Court has committed an abuse of discretion when it failed to consider this well-established principle when denying me leave to amend.

18. I have already had one judgment set aside in this court before, on this grounds. See Case 4:22-cv-00546-JSW (Stebbins v. Rebolo), Dkt. 30. So the Court absolutely should consider whether leave to amend would be futile.

### Judge White did indeed find my stream to not be copyrightable.

19. In support of its finding that there is undue delay, the Court finds that Judge White only found that my error in one copyright registration overcomes the presumption of copyright validity, not that the works are not copyrightable.

20. But this is simply not true. Judge White did indeed state that the other streams lacked minimal creativity. In fact, he did so in the very next paragraph, immediately after the portion that this Court cites! In that next paragraph, he states …

> "Without the presumption of validity, Plaintiff's allegations of ownership regarding the additional livestreams are insufficient. Plaintiff does not allege facts that permit the Court to assess whether the content is eligible for copyright protection. He does not describe the material or address how it meets any of the criteria for copyright protection, such as creativity or originality. Moreover, his allegations of copying are vague and conclusory. Accordingly, Plaintiff fails to allege a viable infringement claim as to the remaining livestream videos."

21. The fact that this paragraph came immediately after the paragraph that this court cited, but this Court then proceeded to ignore it in order to make the finding that entirely contradicts the contents of this paragraph, suggests that its refusal to acknowledge this paragraph was not an oversight by the court, but intentional and malicious. How could you not have seen that paragraph when it is literally right next to the one you actually cite?!

### Goldsmith says the complete opposite of what this Court finds.

22. Moving onto the merits of the fair use defense, the Court cites Andy Warhol Foundation Visual Arts v. Goldsmith, 143 S. Ct. 1258 (2023) in support of its finding that the infringing icon

is transformative, simply by dint of it having a "different purpose." It doesn't even have to criticize me, per se; as long as the purpose is "different" in some capacity, that automatically qualifies as transformative.

23.    But the case law actually says *the complete opposite* of what the Court claims it says!

(a)    "Held: The "purpose and character" of AWF's use of Goldsmith's photograph in commercially licensing Orange Prince to Condé Nast **_does not favor AWF's fair use defense_** to copyright infringement." Id at 1262 (emphasis added).

(b)    "As most copying has some further purpose and many secondary works add something new, the first factor asks 'whether *and to what extent*' the use at issue has a purpose or character different from the original." Id at 1262 (emphasis in original).

(c)    "the degree of transformation required to make 'transformative' use of an original work must go beyond that required to qualify as a derivative." See id at 1263.

(d)    "More generally, when commentary has no critical bearing on the substance or style of the original composition, ... the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger." See id at 1263.

(e)    "AWF contends that ... [b]y adding new expression to the photograph ... Warhol made transformative use of it ... But Campbell cannot be read to mean that § 107(1) weighs in favor of any use that adds new expression, meaning, or message. Otherwise, "transformative use" would swallow the copyright owner's exclusive right to prepare derivative works, as many derivative works that 'recast, transfor[m] or adap[t]' the original, add new expression of some kind." Id at 1264.

(f)    "[F]air use is an objective inquiry into what a user does with an original work, not an inquiry ... into the meaning or impression that an art critic or judge draws from a work."

(g)    "Even granting the District Court's conclusion that Orange Prince reasonably can be perceived to portray Prince as iconic, whereas Goldsmith's portrayal is photorealistic ... that degree of difference is not enough for the first factor to favor AWF ... To hold otherwise might authorize a range of commercial copying of photographs to be used for purposes that

are substantially the same as those of the originals." See id at 1264.

(h)     "AWF asserts another related purpose of Orange Prince, which is to comment on the "dehumanizing nature" and "effects" of celebrity ... But even if such commentary is perceptible ... the asserted commentary is at Campbell's lowest ebb: It 'has no critical bearing on' Goldsmith's photograph." See id at 1264.

24.     This Court finds that the minimal additions to my face still count as being transformative. But the very case law it cites in support of this finding clearly holds the exact opposite: That de minimus alterations simply are not good enough to be considered transformative.

25.     This is literally the complete opposite of what the Court is finding in this case. What's next? Will the Court determine that the case of Texas v. Johnson, 491 U.S. 397 (1989) explicitly holds that flag-burning is NOT protected by the First Amendment?! What's next? Will the Court determine that the case of Brown v. Board of Education, 347 U.S. 483 (1954) explicitly affirms that racial segregation in public schools is allowed under the 14th Amendment?! What's next? Will the Court hold that the case of Fourth Estate Public Corp v. Wall-Street. com, LLC, 139 S. Ct. 881 (2019) explicitly permits all copyright holders (not just livestreamers) to apply for copyright registration and then commence suit while the registration is pending, without having to wait for registration to fully process first?!

26.     Therefore, I ask that the Court vacate its order and reconsider the first factor of fair use.

**It was indeed clear that the icon was being used for a commercial purpose.**

27.     The Court further finds that "it is unclear whether the icon is being used for a commercial purpose, as there are no allegations to suggest this." But that is simply not the case. It is absolutely clear that the icon is being used (at least by Google) for a commercial purpose. Why? Because it's being *hosted by Google*!

28.     Google is for profit company. Everything it does is commercial. Absolutely everything, with no exceptions. Even when they don't charge directly for their services (e.g. hosting services), it is still a commercial endeavor. Simply by agreeing to host the icon on their site for free, Google is seeking to profit (however indirectly) off of this hosting. You don't have to charge for something for the distribution thereof to be a commercial act. Giving away free samples, for

example, is a time-tested way of enticing customers to spend money on products and services.

29.   Even if ATTA is not directly profiting off of using the icon (which is unproven), the fact that Google is, in itself, a commercial entity automatically escalates its use of the icon into being a commercial use.

30.   I honestly have no idea how this is an even remotely complex concept to grasp. Google is commercial. Therefore, the use is commercial. It's as simple as that.

31.   Therefore, I ask that the Court vacate its order and reconsider the first factor of fair use.

### I did indeed address the background of the infringing icon.

32.   The Court further finds that "In addition, while Plaintiff focuses on the two words added onto the image, he ignores the change in the background, which has been replaced with a red background." Again, this is blatantly false, and it is so obviously false that it once again suggests that the Court is not merely mistaken, but lying.

33.   I did indeed address the background of the image. Specifically, I addressed it *in the Complaint*! In that Complaint, I stated the following:

> "Admittedly, there are additions to this image ... on the left side, you can see part of another man's face ... ATTA cropped out most of the stuff that could, conceivably, have rendered the meme transformative. What we are left with is a mish-mash of nebulous 'stuff' simply slapped onto my face. That is not good enough to be considered fair use. "[T]he addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the original transformative." See Seuss v. Comicmix, , 983 F. 3d 443, 453 (9th Cir. 2020)."

34.   So as you can see, I already addressed the nebulous, non-critical stuff. Even Goldsmith, which this Court erroneously cites in support of its decision, clearly holds that minimal transformation of a work that doesn't have any actual critical bearing on the work (such as redrawing a picture to be photorealistic instead of iconic) is not "transformative" because it doesn't actually criticize the work.

35.   Therefore, neither does the reddish-blackish background. It's just an abstract background, which is not transformative under both Seuss v. Comicmix and AWF v. Goldsmith.

36.   Therefore, I ask that the Court vacate its order and reconsider the first factor of fair use.

**I did indeed cite to authority showing a distinction between criticism and harassment.**

37. This is probably the most egregious error the Court made in the entire order. The Court finds that "Plaintiff attempts to draw a distinction between the purpose of criticism and harassment. However ... Plaintiff does not cite to authority to support his argument that such a distinction exists."

38. But I do! I do indeed cite to authority that shows that harassment is legally distinct from criticism! Specifically, I repeatedly reference the equitable doctrine of

# U-N-C-L-E-A-N  H-A-N-D-S!

39. I even cite the Supreme Court case of Sony v. Universal, which acknowledges that fair use is equitable, followed by the treatise "Toward a Fair Use Standard," which mentions the common sense concept that, once something is established as being in equity, unclean hands is a relevant factor to consider.

40. But even if I didn't cite those specific sources, why should I have needed to? Simply by mentioning "unclean hands," the Court should already have known what I was talking about. Simply by dint of you being a US District Court judge, you should already know what unclean hands is. A mere paralegal (let alone lawyer) at a small time personal injury law firm with less than 200 sq ft of rented office space should know what unclean hands is. What's next? If I object to some evidence from the defense on the grounds that it's "hearsay," do I then have to specify that it is Rule of Evidence 802, specifically, that renders that evidence inadmissible?

41. The Court has entirely ignored my arguments regarding unclean hands being a counter-defense to fair use.

42. The Court routinely admonishes me for allegedly failing to address various arguments raised by the defense. The implication with these admonishments seems to be that my failure to address them constitutes tacit admission that the arguments are valid. Of course, these admonishments are blatantly false for reasons I intend to make clear throughout this motion. But even barring that, by the Court's own logic, that means that, because the Court wholesale ignores my argument regarding unclean hands, that must mean it tacitly admits that my argument has

merit.

<u>My arguments in Dkt. 32 in the case of Stebbins v. Rebolo should also be considered.</u>

43.     In addition to the arguments I made in the filings in this case, we mustn't forget that the Court claims to have reviewed my other filings. To that end, it must have read my Second Amended Complaint in the case of Stebbins v. Rebolo. That SAC was not subject to the Local Rules' 25-page limit, and therefore, I was able to properly flesh out my arguments with highly detailed explanations. In ¶¶ 53-140, and then later at ¶¶ 248-273, I provide extensive arguments as to why harassment should be considered distinct from criticism, and therefore not the least bit transformative. ¶¶ 264-273 are especially relevant to the instant case.

44.     In ¶ 67, I even provide multiple sources, written by experts in the field, that provide what this Court says I don't provide: A citation to authority showing that there is in fact a difference between criticism and harassment.

45.     Now, why am I bringing this up here? Well, it's because the Court has already incorporated my filings in other cases into its decision. I'm not the one introducing foreign filings here. The Court has already broken that ice itself.

46.     But once that can of worms has been opened up, one thing the Court absolutely should not do is cherry-pick which parts of my other filings it wants to consider while simply hand waiving the parts that are not convenient to its predetermined verdict as simply not being relevant; at that point, the Court is ***literally*** just making up the rules as it goes along!

47.     Therefore, I ask that the Court vacate its current order and either consider all of my foreign filings, or none of them. It's only fair.

<u>Unclean hands is indeed a relevant factor in copyright law, and has been for years and years.</u>

48.     Perhaps in a nominal attempt to acknowledge my argument regarding unclean hands, the Court insists that the harassment, doxxing, and cyberbullying is not relevant, despite admitting that it is true.

(a)     "Plaintiff stated that he seeks to stop the harassment directed against him. However, that is not a proper use of copyright law."

    (b)    "Although the Court is cognizant of the dangers of cyberbullying, the Court reiterates that copyright law is not appropriate vehicle to seek remedy."

49.    The Court is not simply stating that unclean hands is not a counter-defense to fair use. It is stating that the defendants' purely malicious motives are entirely irrelevant, not just to fair use, but to copyright law in its entirety.

50.    But this is simply not the case. Unclean hands has long been recognized as a relevant factor in copyright law. One of the most famous examples is defense of copyright misuse. "Copyright misuse is an equitable defense to a copyright infringement claim *based upon the doctrine of unclean hands*." See https://scholarship.law.columbia.edu/faculty_scholarship/961/ (emphasis added).

51.    So clearly, not just morality, but unclean hands specifically, is a relevant factor in copyright law!

52.    In addition to that, I was able to find, not just one case, but *three cases*, where (A) the plaintiff sued for either copyright infringement or trademark infringement, (B) the defendant raised fair use as a defense, and (C) the Plaintiff argued, and the Court agreed, that the Defendant was barred from bringing fair use as a defense *because they had unclean hands*!

    (a)    Cullman Ventures, Inc. v. Columbian Art Works, Inc., 717 F. Supp. 96, 134-35 (1989)

    (b)    Atari Games Corp. v. Nintendo of America Inc., 975 F. 2d 832 (Fed.Cir. 1992)

    (c)    Data Gen. Corp. v. Grumman Systems Support Corp., 36 F. 3d 1147, 1170 n. 43 (1st Cir. 1994)

53.    Of course, I shouldn't have to go out and find specific case law that articulates those three ultra-specific points. The mere fact that fair use *is equitable* (as codified by Congress) should automatically mean that unclean hands is a counter to it.

54.    So as the Court can clearly see, its finding that the harassment, doxxing, and cyberbullying – which, again, the Court *admits to being real* – is indeed relevant to countering fair use.

55.    I therefore ask the Court to vacate its previous order and reinstate my claim.

### The Court cites no facts in support of its finding that the original work is "undoubtedly more informational than creative."

56.     Once again, the Court hypocritically admonishes me for allegedly failing to cite to authority (even though I very clearly do) when it fails to give any details or reasons whatsoever for its finding that the livestream was more informational than creative.

57.     The Court does not make any specific findings which support this conclusion. It doesn't specify the exact ratio of stated facts to stated opinions[1], nor does it cite to any authority stating that opinions are informational rather than creative. For a court that admonishes me for not citing any authority in support of my legal arguments (even though I very clearly do), and uses that alleged silence as a tacit admission of defeat, this Court appears to be quite a hypocrite for not showing any legal authority of its own.

58.     I therefore ask the Court to vacate its order and re-adjudicate the second factor of fair use.

### The Court fails to address my argument that the portion used, not the work as a whole, should determine the second factor.

59.     Once again, the Court acts hypocritically by failing to address my argument that the portion used, not the original work as a whole, should dictate fair use, while simultaneously treating my failures to address certain topics (which the Court just made up) as tacit admissions of defeat.

60.     In opposition to the Motion to Dismiss, I very clearly argue that "it is the portion that ATTA copied, not the overall work, that should determine whether the second factor favors or opposes fair use." See Dkt. 36, ¶¶ 59-63.

61.     There is case law to support this legal argument. See Cambridge University Press v. Patton, 769 F. 3d 1232, 1270 (11th Cir. 2014) ("[W]e find that the District Court erred in holding that the second factor favored fair use … Where the excerpts of Plaintiffs' works contained evaluative, analytical, or subjectively descriptive material … or derives from the author's experiences or opinions, the District Court should have held that the second factor … weighed

---

1   Of course, that would require the Cour to go through the entire 4-hour stream, one sentence at a time – like picking individual grains of rice out of a swimming pool – and making the determination whether each individual sentence is a statement of fact or a statement of opinion.

against fair use *in cases of excerpts that were dominated by such material*") (emphasis added).

62. The fact that the Court said "in cases of excerpts that were dominated by such material" demonstrates that it is the portions that the defendant excerpted from, not the work as a whole, that determine the second factor of fair use.

63. Therefore, I ask that the Court vacate its order and issue a new one, properly adjudicating the arguments and evidence that I actually put forth.

**The Court does not address my claim that the Defendants' total lack of proof of the 4th Factor means their argument should be tossed out summarily.**

64. Once again, the Court completely ignores my legal arguments – which were backed with citations to *binding precedent* – while simultaneously claiming (falsely) that I didn't address certain points, and my alleged failure to address them is a tacit admission of defeat.

65. In DKT 36, ¶ 72, I cited the binding precedent of Monge v. Maya Magazines, Inc., 688 F. 3d 1164, 1181 (9th Cir. 2012), which held that the fourth factor must weigh against fair use when the Defendant "does not offer any evidence of the relevant market or the lack of market harm from its publication other than broad, unsubstantiated statements in its brief." Here, Defendant Google has not offered any evidence of the lack fo market harm, other than broad, unsubstantiated statements in its brief. Therefore, the Court is bound, by binding precedent, to reject the Defendant's claims.

66. I therefore ask the Court to vacate its order and issue a new one in its place, complying with the binding precedent in the 9th Circuit.

**Defendant's argument that "there is no protectible derivative market for criticism" was in the Reply. As such, I literally couldn't address it.**

67. In one of the few times when the Court is technically correct in finding that I failed to address a particular argument, the Court finds that I didn't address the Defendant's claim that "there is no protectible derivative market for criticism." What the Court conveniently overlooks is that I literally couldn't address that argument, even if I wanted to.

68. This is because this argument was never raised in the original Motion to Dismiss, but in the reply in support thereof. See Dkt. 41, p. 6, line 22. Even if I had attempted to file a new brief

arguing against it, the Court likely would have just stricken that brief, similar to how it extended the time for the defense to respond to the Motion for Partial Summary Judgment on the grounds that said motion could not serve as an authorized surreply.

69. As such, the Court should not hold it against me that I did not address this argument.

70. Therefore, I ask the Court to vacate its order and issue a new one in its place that takes into consideration the fact that I could not address that argument. At the very least, the Court should give me leave to issue a surreply (an *authorized* one, this time) to address that argument.

**The Court's finding of my alleged "numerous motions" within this one case should only be grounds for lesser sanctions, not declaring me a vexatious litigant.**

71. Moving onto the sanctions themselves, the Court appears to concede that this entire case (that is … the case itself … the one that got filed in January of this year) is not wholly frivolous in and of itself. Rather, the Court's logic appears to be that the motions I have filed are what have rendered this case frivolous, not simply what I was suing over in the first place. See Dkt. 71, p. 17, lines 2-3 ("Plaintiff also argues that the instant case is not frivolous. However, Plaintiff's conduct in filing ***hundreds***[2] of motions that have little merit in this and other satisfies this factor").

72. The implication seems to be that, had I been more reserved with filing so many motions, I might have been able to escape being declared a vexatious litigant.

73. However, are numerous problems with this approach. First, the Defense never moved for me to be declared a vexatious litigant on the motions I have filed in this case. Therefore, such a declaration was never put before the Court. While the Court does have some power to raise that issue sua sponte, pursuant ot the All Writs Act, the Court also correctly acknowledges that I must be given a fair opportunity to argue in my defense before it can impose those sanctions (see Dkt. 71, p. 14, lines 18-25).

74. I have only gotten that opportunity in regards to being declared vexatious just for the filing of the Complaint itself, which the Court appears to concede was not frivolous all one its

---

2   Also, this is blatantly false and downright preposterous. There literally has not even been "hundreds" of filings in this case (the order of dismissal was Dkt. 71, not Dkt. 710), let alone filed by me. The Court is literally lying and artificially inflating the facts to try and retroactively justify its decision ("retroactively" being the key word).

own. If the Court wants to sua sponte insert its own legal theory to declare me a vexatious litigant, I have the right under Gaven v. San Francisco to a fair opportunity to oppose this new theory. With regards to this new theory (the motions being what makes me vexatious, rather than the Complaint), I have not gotten that.

75. Therefore, I ask the Court to remove the sanctions. If it still wishes to consider finding em a vexatious litigant, I ask that the Court issue a deadline for me to show cause as to why I shouldn't be declared vexatious under this new theory.

**The sanctions are not "narrowly tailored" to one who merely files a lot of motions.**

76. Barring that, the sanctions imposed on me are not "narrowly tailored" to the specific things that this Court found to be vexatious. If the motions I file in the case are what make me vexatious, then why not place restrictions on my ability to file motions within the case itself?

77. Instead, the Court imposed restrictions on my ability to file complaints in the first instance. This might have been narrowly tailored if the Court had found the Complaint itself to be frivolous, but it has not done so here. Once the initial complaint has been approved for filing, under this set of sanctions, I would, theoretically, be free to file as many motions in that case as I want. This does very little to hinder my ability to file a lot of motions, which is presumably what the Court is supposed to be sanctioning me for.

78. For this reason, even if the Court still insists on imposing restrictions on me, I humbly ask that it replace the sanctions it has imposed with ones that better reflect the findings it actually made.

**The sanctions the Court is imposing on me are redundant of the review the Court is already supposed to provide under 28 USC § 1915, just with superfluous extra steps.**

79. The Court is not revoking my ability to file in forma pauperis. Instead, it is requiring my complaints to be screened before they can go through with service of process.

80. This, however, is entirely redundant of the screening that the Court is already supposed to provide pursuant to 28 USC § 1915(e)(2).

81. If the Court insists on maintaining this sanction, then I humbly ask that it explain why the existing § 1915 review is insufficient. The only explanation I can think of is the fact that this case

was able to slip through the cracks despite it being subject to not one, but two[3] such reviews.

82.     However, there are two problems with that logic. First, as I already pointed out, the Court appears to concede that the Complaint itself is not inherently frivolous, but that is the only part that the CCB and Magistrate Judge Cisneros even had the chance to review. It is also the only thing the duty judge would be able to review if I were subject to the sanctions the Court has now imposed upon me. So all this really is is just a second § 1915 that does absolutely nothing that the first § 1915 review did.

83.     Second, even if you (District Judge Trina Thompson) truly believe that Magistrate Judge Cisneros shirked her duty to conduct a § 1915 review on the Complaint before ordering service of process, that's Cisneros's fault, not mine. I should not be punished for her failure to do her job. At best, the Court should admonish Cisneros for allegedly not conducting a § 1915 review, not punish me for filing a lawsuit, expecting it to be subject to said review.

## CONCLUSION

84.     Wherefore, premises considered, I respectfully pray that the judgment be set aside.

So requested on this, the 1st day of September, 2023.

*/s/ David Stebbins*
David Stebbins (pro se)

---

[3] As I explained in earlier filings, this case had already been filed with the Copyright Claims Board, who conducts similar reviews for all claims brought before it, not just the in forma pauperis ones.