David Stebbins (pro se Plaintiff)    123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947    acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                 PLAINTIFF

VS.                              Case 3:23-cv-00322-TLT

GOOGLE, LLC                                                                     DEFENDANTS

### RESPONSE TO ORDER TO SHOW CAUSE

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response to Dkt. 75, the Court's Order to Show Cause as to why I should not be sanctioned.

**There was no bad faith conduct.**

1. The Court has failed to identify any alleged bad faith conduct I have engaged in. Supposedly, the only bad faith conduct I allegedly engaged in was failing to respond to Defense Counsel's statement asking me to certify that I had deleted all the recordings.

2. I was never ordered to certify to the Court that I had complied with its order. Its only order pertaining to the recording was "Plaintiff is ORDERED to immediately remove the recording from YouTube, delete copies of this or any recording Plaintiff has retained between Plaintiff and Defendant, and cease any future recording." See DKT 71, pp. 5-6.

3. My performance is precisely in line with th Court's orders. It would be inherently unfair to sanction me because I did not do *more* than what the Court ordered me to do.

4. Nor is it bad faith that I simply did not respond to Defense Counsel's correspondence. Neither the Court, nor defense counsel, has pointed to any authority stating that I am required to do so. I am not aware of any statute, case law, federal rule of civil procedure, or federal rule of professional conduct, stating that a party ordered by the Court to do so something is, by default, required to certify in writing that he has done so.

5. Once again, the Court cannot legislate from the bench. Unless it can point to an affirmative duty which I hold, then I cannot be held to have acted in bad faith simply by not doing the thing I am not required to do.

**I have complied.**

6.         Aside from my failure to answer Defense Counsel's correspondence in exactly the way they wanted me to, there is no evidence that I have no complied. What, do I not have the right to be presumed innocent until proven guilty (the key word being "proven")? If not, then that is yet another violate of my constitutional right to due process of law.

7.         But nevertheless, I have indeed complied, and I did later the same day that the Court ordered me to. To prove this, please see this unlisted YouTube video: youtu.be/Q0JvEM7zEfI. In the center of the screen in that video, you can see me permanently deleted all video files with "26(f)" in the title. But if you look in the bottom-right corner of the screen, you can see this happened on the evening of August 31, 2023, the same day the Court issued its order. I had a feeling the defense counsel would try to hunt me down, so I planned in advance.

8.         But I honestly should never have had to comply with this order in the first place. This leads me to my next two points (the latter of which is perhaps the most important of all).

**As I pointed out in the Motion to Set Aside Judgment, my initial recording was never in bad faith.**

9.         In addition to there being no legal duty to follow up with the Court's order in any manner except complying therewith, as I pointed out in the Motion to Set Aside Judgment, my initial recording was not even done in bad faith in the first place.

10.        The Court cites the case of Nissan Motor Co. v. Nissan Computer Corp., 180 F. Supp. 2d 1089 (C.D. Cal. 2002) to support its finding that my recording of the call was improper. But that case does not create a stand-alone, blanket prohibition of recording attorneys' phone calls. In fact, the Court in that case goes out of his way to make clear the complete opposite:

> "The American Bar Association Standing Committee on Ethics and Professional Responsibility recently issued a Formal Opinion which stated that a lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation ***does not necessarily violate the Model Rules of Professional Conduct***. The Committee advised that a lawyer may not, however, record conversations in violation of the law in a jurisdiction that forbids such conduct without the consent of all parties, nor falsely represent that a conversation is not being recorded." See id at 1096 (emphasis added).

11.     In other words, it only becomes illegal if, like in Nissan, the one recording the call is in an all-party consent state. Yes, California is an all-party consent state, but this recording wasn't subject to the laws of the *State of California*. For reasons I stated in the motion, the only jurisdictions that are arguably applicable are both one-party consent states.

12.     This only further demonstrates that my actions were not in bad faith. It's one thing to ascribe bad faith to someone who has lived in California all his life, knows that California is an all-party consent state, and knowingly recording a conversation without the other party's knowledge or consent simply because he doesn't care. It's another thing to ascribe that same bad faith to an actor who is a resident of a one-party consent state, where such unilateral and clandestine recording of phone calls is not only acceptable, but commonplace.

13.     In fact, speaking of one-party consent states, as I was typing this response, I suddenly remembered a fact that renders everything we've discussed up to this point entirely moot!

> **The only actual "parties" to the 26(f) phone call were myself and Mr. Auster ... and Mr. Auster practices out of New York ... and New York is also a one-party consent state!**

14.     This, more than anything else, defeats the Court's order and strips the court of nearly all jurisdiction over this recording.

15.     To the best of my recollection[1], I only ever spoke with Jeremy Auster in the 26(f) conference. This changes everything because Jeremy Auster practices out of New York, not California! He is only practicing in this Court pro hac vice! See Dkt. 21 and 27!

16.     This changes everything because, like Arkansas, New York is a one-party consent state! See https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/#new_york ("Under New York's eavesdropping law, it is illegal to record in-person or telephone conversations without the consent of *at least one* party").

17.     Mr. Auster made the call from a New York phone number. See **Exhibit A**, my Google Voice records (with my private information redacted) proving that, on March 30, 2023, at 10:00AM Central Time, I received a call from a number whose area code was 516, which is a New York area code. Mr. Auster and I agreed to do the conference on March 30 (see **Exhibit B**)

---

[1] Admittedly, I do not know for sure, because the primary means I had to refresh my memory on the topic was deleted per the Cour'ts instructions.

and, after a little back and forth, we agreed to a time slot of 11:00AM Eastern Time (see **Exhibit C**), which corresponds exactly to the Google Voice timestamp shown in Exhibit A.

18. So not only does Mr. Auster practice out of New York, he was, almost certainly, in New York when he made the call.

19. So this is not even a case of me recording a call from Arkansas to California. This is a case of me recording a call from one single-party-consent state being made to *another* single-party consent state! California is only nominally connected to the call at this point. The only real connection that California has to the call, and the recording thereof, is the fact that the *subject matter* of the call was about affairs that were transpiring in a Californian court. But since when has the subject-matter of a phone call single-handedly been enough to establish minimum contacts in the state being discussed? By that logic, any time I talk on the phone with my friend Ginny in the State of Georgia, and mention the ongoing war between Russia and Ukraine, do I suddenly become subject to either Russian or Ukrainian jurisdiction, simply because I'm talking about them during an interstate phone call?!

20. In fact, in the Nissan case – the very case law the Court cites in support of its position – the defense even raised a similar argument (that the call was done pursuant to an official proceeding), only for the Court to explicitly shoot that idea down! See id at 1095-96:

> "Counsel for NCC contends that the conversations between counsel are part of the judicial process and are communications made in furtherance of the litigation process. Therefore, it is argued, these communications are not confidential communications because they are subject to the statutory exception relating to communications made as part of any legislative, judicial, executive or administrative proceeding open to the public. The fact that there may be a strong public policy in favor of an open and public litigation process, as counsel for NCC argues, in no way provides support for the proposition that counsel may secretly tape record conversations with other attorneys." (citations and quotations omitted)

21. But even if the Court disagrees with that portion of the case law (which the Court does, technically, have discretion to do, since it is only a district court opinion and therefore is not binding precedent), then that only reinstates the defense's previous argument: That the underlying phone call is subject to the "official proceedings" statutory exemption. Either this wasn't part of

an official proceeding, at which point, California does not even have jurisdiction over the recording in the first place (an anomaly that wasn't present in the Nissan case, since both lawyers practiced out of California, so California had jurisdiction anyway), or it was part of an official proceeding, at which point it is statutorily exempt from California's recording law.

22. But one thing the Court absolutely should not do is cherry-pick which parts of the current controversy are subject to California law and which parts aren't, and say that it is "pursuant to an official proceeding" for purposes of giving itself jurisdiction but not for the purposes of creating a statutory exemption. At that point, the Court is *literally* just making up the rules as it goes along. Unless the Court has a genuinely good reason for the double standard[2], then fundamental fairness and my constitutional right to due process of law requires that either the entirety of the call was pursuant to a Californian official proceeding, or none of it was.

23. The only other way my recording of the call could possibly have created minimum contacts in California is if there was a third party to the call, such as Ryan Benjamin, who is also counsel in this case and practices out of Los Angeles. However, as I mentioned earlier, my recollection is that Mr. Auster was the only one who I spoke to. Even if Ryan Benjamin was *listening* remotely from his office in Los Angeles (and to my recollection, I was never informed of that), that does not make him a *party* to the call. If it did, then anyone could wiretap any phone and listen in on two unrelated people's conversations without their knowledge or consent, and it would never be illegal, even if neither of the two people who actually talked to each other knew about or consented to the wiretapping, simply because the third party stalker would necessarily be considered a "party" to the call simply by dint of listening in. Since that is, obviously, not how it works, then by necessity, a person must actively participate in the conversation in order to be considered a "party" to the call.

24. The reason for this is obvious. The whole reason there are laws concerning the recording of phone calls is due to privacy concerns. But that just begs the question ... what part of Ryan

---

2  And no, the fact that the Court finds me, David Stebbins in particular, to personally annoy her and she just wants me out of her hair by any means necessary is not a "genuinely good reason." In fact, it's grounds for recusal. See Liteky v. USA, 510 US 540, 555 (1994) ("opinions formed by the judge on the basis of … events occurring in the course of the current proceedings" constitute grounds for recusal when "they reveal such a high degree of ... antagonism as to make fair judgment impossible").

Benjamin's privacy could I possibly invade if I record a phone call *__where he never said anything?!__* The idea is absurd on its face. At that point, the Court loses, not only personal jurisdiction, but also subject-matter jurisdiction, owing to a lack of Article III "case or controversy," due to a lack of articulable injury. See Hollingsworth v. Perry 570 U.S. 693 (2013), which held that the Article III "case or controversy" clause "requires, among other things, that it have suffered a concrete and particularized injury." No injury, no case or controversy; and no case or controversy, no jurisdiction. Period.

25. But, for the sake of argument, let's say that's true. Suppose Ryan Benjamin was indeed listening, and that this listening singlehandedly made him a "party" to the call for purposes of recording and privacy laws. Even if that were true, that only removes the Defendants' reasonable expectation of privacy in the first place.

26. Under California law, all parties must consent to the recording of a phone call if, and only if, "a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." See Flanagan v. Flanagan, 41 P.3d 575 (Cal. 2002). But if Ryan Benjamin was listening, remotely, to the call between me and Mr. Auster, then Mr. Auster absolutely should have reasonably expected that people (namely, Mr. Benjamin) could overhear!

27. This puts the Defense Counsel, as well as the Court, in a Catch-22. The only way California has jurisdiction over this recording is if at least one party to the call was inside California at the time the call happened. But if that is the case, then Defense Counsel should have known that their call was being overheard by each other, which makes it fair game to record anyway.

28. But of course, that doesn't really matter, because as I mentioned earlier, you have to actively participate in a conversation in order to be legally classified as a "party" to that call for purposes of recording and privacy laws. Since Ryan Benjamin, to my recollection, never said a word in that call, he does not count. Since the only two people who *actually participated* in that call were from Arkansas and New York, respectively, California law is entirely inapplicable.

29. Again, the Nissan case does not hold that it is categorically improper for attorneys to record each others' phone calls. It only becomes improper if, and only if, it violates the recording

laws of the state in which the call takes place. Since there is no theory under which California's recording law was arguably violated in this case, I am legally entitled to have this show-cause order dissolved and my legal duties pursuant thereof expunged.

## Conclusion

30. In Conclusion, the Court's order that I delete the recording and subsequent order to show cause as to why I should not be sanctioned is nothing short of judicial overreach. The Court, as a California native herself, has the right to personally feel appalled by conduct that, in California, may be considered morally untenable. But the Court does not have the right to insert her personal views in place of the Rule of Law.

31. The Court acted rashly. It had a knee-jerk reaction to my conduct without considering the facts or the applicable law, or even considering whether California law was even applicable at all. This is an egregious abuse of judicial power and it borders on unprofessional conduct in its own right.

32. The Court is threatening to sanction me for recording these calls. But "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." See Bordenkircher v. Hayes, 434 US 357, 363 (1978) (citations and quotations omitted).

33. Not only that, but there appears to be a very high likelihood that the Court's animosity towards me for having recording the call played a roll in its discretionary decision-making throughout the entire rest of the opinion, including its analysis of the fair use of the infringing icon. This would certainly explain why it simply declared "Plaintiff may not amend his complaint" but failed to give literally any reasons whatsoever for why it came to that conclusion[3]. It would also explain why the Court completely failed to address a multitude of arguments I presented to the Court (chief among them being the counter-defense of unclean hands, which the Court completely and utterly ignored) while unironically insisting that my alleged failure to address

---

3 This is automatically an abuse of discretion on the Court's part, to the exclusion of all other factors. See Foman v. Davis, 371 US 178, 182 (1962) ("Of course, the grant or denial ... is within the discretion of the District Court, but outright refusal ... without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules").

various arguments (which wasn't even true most of the time to begin with) constituted a tacit admission of defeat from me. If the Court was personally appalled by me recording my phone call with Mr. Auster, and acted with retaliatory animus accordingly, that would certainly explain quite a few things. But if that were the case, that is grounds for recusal as mentioned above.

34.     Wherefore, premises considered, I humbly ask the Court to rescind its order for me to cease and desist recording any future calls with defense counsel, to dissolve its order to show cause, to publicly apologize to me for harassing me over something the Court personally didn't like but never took the time to consider whether the applicable law made it illegal, and to grant the motion to vacate judgment.

So requested on this, the 14th day of September, 2023.

*/s/ David Stebbins*
David Stebbins (pro se)